1  EDWARD M. LYMAN III (CABN 248264)
2  ed@family.legal
   FAMILY LEGAL | A Professional Law Corporation
3  PO Box 5189
   Playa del Rey, CA 90293
4  Telephone: (310) 752-7770
   Facsimiles: (310) 752-7660
5
6  Attorney for Plaintiff Susan Bassi

7            UNITED STATES DISTRICT COURT

8           NORTHERN DISTRICT OF CALIFORNIA

9

10 | SUSAN HAZLETT BASSI,                | Case No. 18-CV-07239 SI

11 |                                     | **FIRST AMENDED COMPLAINT**

12 |              Plaintiff,             | 1.  FIRST AMENDMENT
                                           [RETALIATION]
13 | v.

14 | COUNTY OF SANTA CLARA, a            | 2.  FOURTH AMENDMENT
     municipal entity; JEFFREY F. ROSEN,     [SEARCH AND SEIZURE]
15 | NICOLE FORD, KASEY HALCON,
     DEPUTY DAVID GOMEZ, and           | 3.  FOURTH AMENDMENT
16 | DEPUTY BRYAN OLIVERI, in their          [EXCESSIVE FORCE]
     individual and official capacities;  and
17 | DOES 1-10; individually, jointly, and | 4.  FOURTH AMENDMENT
     severally,                               [MALICIOUS PROSECUTION]
18 |
19 |                                     | 5.  CONSPIRACY TO VIOLATE
               Defendants.                    CIVIL RIGHTS
20 |
21 |                                     | 6.  MUNICIPAL LIABILITY
                                             [FINAL DECISION MAKER]
22 |
23 |                                     | 7.  MALICIOUS PROSECUTION

24 |                                     | 8.  ABUSE OF PROCESS

25 |                                     | 9.  BATTERY

26 |                                     | 10. CALIFORNIA'S BANE ACT

27 |
28 |                                     | DEMAND FOR JURY TRIAL

## COMPLAINT FOR DAMAGES

Plaintiff Susan Bassi ("Bassi") brings this action against the County of Santa Clara ("County") and its officials including District Attorney Jeffrey F. Rosen, Nicole Ford, Kasey Halcón, Deputy Bryan Oliveri, and Deputy David Gomez.  Plaintiff alleges as follows:

## INTRODUCTION

1.    This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights in connection with her activities protected by the First Amendment, including news gathering, reporting, political speech, and petitioning.  Defendants are liable under the Constitution pursuant to the First, Fourth, and Fourteenth Amendments brought under 42 U.S.C. §§ 1983, 1985.

2.    This action is in the public interest as Plaintiff seeks by means of this action to hold accountable those responsible for the injuries inflicted by the Defendants.

## JURISDICTIONAL STATEMENT

3.    Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

4.    This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments of the United States Constitution.

5.    This Court has supplemental jurisdiction over Plaintiffs claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

6.    Venue is proper in this Court under 28 U.S.C. § 1391(b) and (e) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

1

### DIVISION ASSIGNMENT

2      7.      Assignment of this action to the San Francisco Division of this Court is

3   proper pursuant to Local Rule 3-2(c) because the events giving rise to this action

4   occurred in the Northern District of California.

5

### THE PARTIES

6      8.      At all relevant times, Plaintiff Susan Bassi was and is an individual

7   residing in Los Gatos, California.

8      9.      Defendant County of Santa Clara ("COUNTY") is and was a duly

9   organized public entity, form unknown, existing under the laws of the State of

10  California.  Defendant COUNTY is a chartered political subdivision of the State of

11  California that is within this judicial district with the capacity to be sued. Defendant

12  COUNTY is responsible for the actions, omissions, policies, procedures, practices,

13  and customs of its various agents and agencies, including the County of Santa Clara

14  Sherriff's Department ("SCSD"). At all relevant times, Defendant COUNTY was

15  responsible for assuring that the actions, omissions, policies, procedures, practices,

16  and customs of the SCSD and its employees and agents complied with the laws of the

17  United States and the State of California. At all relevant times, Defendant COUNTY

18  was the employer of the each of the defendants and DOES 1-10, inclusive. As set

19  forth below, Plaintiff alleges that Defendant COUNTY is directly liable for

20  compensatory damages under federal law pursuant to *Monell v. Department of Soc.*

21  *Svcs.*, 436 U.S. 658 (1978) and its progeny. Plaintiff further alleges that Defendant

22  COUNTY is vicariously liable for compensatory damages under Plaintiff's state law

23  claims, given Plaintiff's allegations that individual defendants who committed the acts

24  and omissions complained of herein were acting in the course and scope of their

25  employment at the time that the acts and omissions occurred. Plaintiff makes no claim

26  for punitive damages against the Defendant COUNTY.

27     10.     Defendant Jeffrey F. Rosen ("ROSEN") is the District Attorney of the

28  Defendant COUNTY.  At all relevant times, ROSEN was acting under color of law

within the course and scope of his duties as a district attorney working for the COUNTY.  At all relevant times, ROSEN was acting with complete authority and ratification of his principal, Defendant COUNTY.

11.     Defendant Nicole Ford ("FORD") was and is the commissioner of the Defendant COUNTY's Domestic Violence Council ("DVC").  At all times material, Defendant FORD was acting under color of law within the course and scope of her duties as the Defendant COUNTY's commissioner of the DVC.  At all relevant times, FORD was acting with complete authority and ratification of her principal, Defendant COUNTY.

12.     Defendant Kasey Halcon ("HALCON") was and is employed by the Defendant COUNTY as the Director of the Office of the District Attorney's Victim Witness Program.  Effective February 7, 2022, HACLON was appointed to serve as a Deputy County Executive.  At all relevant times, HALCON was acting under color of law within the course and scope of her duties as the Director of Victim Witness Program. At all relevant times, HALCON was acting with complete authority and ratification of her principal, Defendant COUNTY.

13.     Defendant Bryan Oliveri ("OLIVERI") was a deputy working for the SCSD.  At all relevant times, OLIVERI was acting under color of law within the course and scope of his duties as deputy working for SCSD. At all relevant times, OLIVERI was acting with complete authority and ratification of his principal, Defendant COUNTY.

14.     Defendant David Gomez ("GOMEZ") was a deputy working for the SCSD.  At all relevant times, GOMEZ was acting under color of law within the course and scope of his duties as deputy working for SCSD. At all relevant times, OLIVERI was acting with complete authority and ratification of his principal, Defendant COUNTY.

15.     Defendants DOES 1-5, inclusive, are employees for the Defendant COUNTY.  At all relevant times, DOES 1-5 were acting under color of law within the

course and scope of their duties for Defendant COUNTY. At all relevant times, Defendant DOES 1-10, inclusive, acted with complete authority and ratification of their principal, Defendant COUNTY.

16.     Defendants DOES 6-10, inclusive, are managerial, supervisorial, or policymaking employees of the Defendant COUNTY, who were acting under color of law within the course and scope of their duties as supervisorial officials for the Defendant COUNTY.  Defendants DOES 6-10 were acting with the complete authority of their principal, Defendant COUNTY.

17.     Plaintiff is ignorant of the true names and capacities of Defendants DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend the complaint to allege the true names and capacities of those defendants when the same has been ascertained. Plaintiff is informed and believes, and on that basis alleges, that DOES 1-10, inclusive, and each of them, are responsible in some manner for the occurrences alleged herein and proximately caused Plaintiff's damages.

18.     On information and belief, DOES 1-10, inclusive, were at all relevant times residents of this judicial district.

19.     Plaintiff is informed and believes, and on that basis alleges, that Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other. At all times mentioned herein, each and every Defendant had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

20.     At all relevant times mentioned herein, the acts and omissions of all Defendants were pursuant to the actual customs, practices, policies and/or procedures of the Defendant COUNTY.

21.     Plaintiff is informed and believes, and on that basis alleges, that at all

times mentioned herein all Defendants acted under color of law, statute, ordinance, regulations, customs and usages of the State of California and Defendant COUNTY.

22.   All Defendants who are natural persons, including DOES 1-10, inclusive, are sued individually and/or in his/her capacity as officials, officers, officers, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the Defendant COUNTY. Moreover, Defendants and their agents ratified all the acts complained of herein.

23.   Pursuant to Cal. Govt. Code § 815.2(a), Defendant COUNTY is vicariously liable for the nonfeasance and malfeasance of the individual Defendants including DOES 1-10, inclusive, as alleged by Plaintiff's state law claims. ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). Defendants and DOES 1-10, inclusive, are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code § 820(a). Defendant COUNTY is also liable pursuant to Cal. Govt. Code § 815.6.

24.   All Defendants who are natural persons, including Defendant Officers and DOES 1-10, inclusive, are sued in their individual capacity, and/or in his/her capacity as officers, supervisors, agents, policy makers, and representatives (regardless of rank or title) of Defendant COUNTY; and punitive damages are only being requested as to these Defendants, and not Defendant COUNTY.

## FACTS COMMON TO ALL CLAIMS

25.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

### Defendant Rosen's relationship with Judge James E. Towery.

26.   James E. Towery is a former judge and no longer licensed to practice law in the State of California.  According to an official publication of the State Bar of California, Towery was "an expert in lawyer ethics."

27.     In the early 1990s, Towery practiced law at the law firm of Hoge, Fenton, Jones & Appel, Inc.   Towery also chaired the State Bar of California's Discipline Committee.   By 1995 Towery nominated himself and was elected president of the State Bar of California for a term of one year.  Thereafter, Towery immediately returned to his private law practice at the firm of Hoge, Fenton, Jones & Appel, Inc.

28.     In 2010, one of Towery's clients was Defendant ROSEN, then-candidate for the Office of District Attorney of the Defendant COUNTY.



29.     On June 8, 2010, Defendant ROSEN won the election and ever since has served as the District Attorney of the Defendant COUNTY.  Defendant ROSEN appointed his best friend Jay Boyarsky to serve as Chief Assistant District Attorney.

30.     James Towery went to work in the Office of Chief Trial Counsel for the State Bar of California from 2010- 2011.

31.     In 2012, James Towery was appointed to the Santa Clara County Superior Court by then-Governor Jerry Brown and was assigned to the family court in where he remained until he retired in May 2023.

***Plaintiff Susan Bassi's background and divorce proceedings.***

32.     Plaintiff is a journalist who owns and operates a publishing and production business in Santa Clara County.

33.     On September 18, 2012, Plaintiff's then-husband Robert Bassi filed for divorce and at a certain point in the proceedings, he was represented by attorney Brad Baugh while Susan Bassi was represented attorney Robert J. Tennant.

34.     In 2015, Plaintiff's divorce case was reassigned to then-Judge James E. Towery.

***Plaintiff reports judicial corruption to Defendant ROSEN's office.***

35.     Beginning in 2015, and on multiple other occasions, Plaintiff and her then-divorce counsel Mr. Tennant reported to Defendant ROSEN's office that Judge Towery had engaged in judicial corruption within her divorce proceedings.

36.     At that time, however, Plaintiff was unaware at that Defendant ROSEN had a close personal and business relationship with Judge Towery.  Specifically, Plaintiff was unaware that (1) Defendant ROSEN was a client of Judge Towery's; (2) Judge Towery's wife originally hired Defendant ROSEN to work as a deputy district attorney; and (3) that Judge Towery was the head of a secret, nonpublic group: Bar/Bench/Media/Police Committee ("BBMP"); and (4) Defendant ROSEN was a member of Judge Towery's secret BBMP.

***Judge Towery's secret group: The Bar/Bench/Media/Police Committee ("BBMP")***

37.     In 2014, Towery became the co-chair of the BBMP, a secret, nonpublic group comprised of judges, attorneys, journalists, and law enforcement officials. BBMP's stated goal was: "to provide an off-the-record forum for full and frank presentations, and through that means, a meaningful mechanism for exchanging views, concerns, and ideas among the various disciplines composing its membership."

38.     BBMP's members and guests had to be authorized by either Judge Towery or Judge Lori E. Pegg. Individuals from the Defendant ROSEN's Office, including Defendant ROSEN, deputy assistant district attorneys, and staffers, were members of the BBMP and frequently attended its secret meetings hosted in a private ballroom at the Three Flames Restaurant in San Jose, California.

39.     Defendant ROSEN frequently attended BBMP's secret meetings.  In 2010, BBMP hosted Defendant ROSEN's political forum, when Defendant ROSEN was vying to become elected as the District Attorney for the Defendant COUNTY. After winning the election, Defendant ROSEN continued to participate in BBMP's secret meetings, including throughout the time that Plaintiff was reporting to Defendant ROSEN's office that Judge Towery was engaged in judicial corruption.

40.     Defendant ROSEN failed to pursue anyone involved in the corruption that Plaintiff had reported.

***Plaintiff engages political speech critical of Defendant Rosen and his office.***

41.     On November 5, 2015, Plaintiff published an article about injustice and corruption occurring within the Santa Clara County Court.

42.     On January 9, 2016, Plaintiff created a petition on Change.org to demand that Defendant COUNTY officials including Defendant ROSEN investigate corruption within family law courts.

43.     On April 9, 2016, Plaintiff published the article *Stopping Bad Judges and Family Courts that Criminalize Divorce Cases* which reported that Defendant ROSEN's office had been ignoring complaints that family court judges and lawyers were engaged in misconduct.  The article stated that Defendant ROSEN seemed unconcerned about corrupt activities occurring within the family law courts.

44.     On May 23, 2016, Plaintiff published the article *Family Courts: sanctuary for pedophilia, Rapists and sex abusers.*  The article stated that Defendant ROSEN "looked the other way in family law cases."  The article further stated:

> Mr. Rosen is now coming under fire for letting a wealthy real estate mogul off the hook and ignoring the allegations of his former wife. Mr. Rosen appears to be unwilling to help any woman in a family court matter. . .
>
> It is widely known Mr. Rosen has been too soft on judges and lawyers in this county for too long and the conduct, imposed largely against children, has flourished as a result.

45. On June 14, 2016, Plaintiff published the article *Santa Clara Judges under fire after Stanford rape case ruling.* The article stated:

> Jeff Rosen's office stood before the world representing they had fought hard to bring a rapist to justice, Jeff Rosen was silent on the rapists, abusers, molesters and robbers he has ignored in Santa Clara County's family courts for decades.

46. The article criticized Defendant ROSEN for covering up corruption within the Santa Clara County Superior Court, including allegations that former Superior Court CEO David Yamasaki had misappropriated public funds and withheld information concerning a private investment group that provided Superior Court judicial officers with favorable mortgage rates.

47. On August 11, 2016, Plaintiff published an article criticizing Defendant ROSEN's office, including Defendants ROSEN, FORD, and Judge Towery's wife, Karyn Sinunu-Towery, for failing to protect victims of domestic violence.

48. On October 11, 2016, Plaintiff's then-divorce attorney submitted a complaint to the Santa Clara County Sheriff's Department regarding the illegal conduct of Defendant Deputy OLIVERI, who at the time served as Judge Towery's bailiff and interfered with Plaintiff's divorce proceedings.

49. On October 21, 2016, Plaintiff published the article *Santa Clara County DA – Jeff Rosen – failed to do his job in Audrie Pott Suicide Case and Houghton indictment.* The article criticized Defendant ROSEN for incompetence, ignoring family court victims, and mishandling a high-profile criminal investigation. The

article criticized Defendant ROSEN for ignoring alleged acts of judicial corruption involving Judge Towery.

50.    On April 25, 2017, Plaintiff published the article *Rats bail from CJPs as Santa Clara County DA buries misconduct by DA's Office in criminal sex abuse of child.* The article was critical of Judge Towery for using a child custody case to "cover up" for Defendant ROSEN. The article discussed loyalty between Judge Towery's wife Karyn Sinunu-Towery and Defendant ROSEN and how he "covers up RICO and other crimes." The article stated:

> Whistleblowers report that Rosen's office failed to investigate employee misconduct of Judge Chiarello that resulted in Alycia Mesiti's death as far back as 2009, and  after Chiarello awarded the father custody, despite his abusive record , allowing the father to kill his own daughter.

51.    On April 25, 2017, Plaintiff published the article *California State Bar: Selective investigations-Gloria Allred in line of fire.* Plaintiff was critical of Defendant ROSEN for dropping rape charges against professional football players.

52.    Plaintiff criticized Defendant ROSEN's campaign for re-election for allegedly exploiting two high profile cases, one involving a rape and the other a suicide.   Plaintiff questioned how one of the cases was assigned to Judge Towery. And how the alleged victim came to be represented by Defendant FORD.

53.    Plaintiff reported that James Towery's wife, Karyn Sinunu Towery, who had been employed by the Defendant COUNTY to work at the District Attorney's office over the last 3 decades, reportedly hired Defendant ROSEN as a deputy district attorney.

54.    Plaintiff reported that it was widely known that Judge Towery, while serving at the State Bar of California "did not prosecute lawyers in his 'in crowd,' including lawyers in the DA's office like Rosen. . .  Towery has the game locked up in Silicon Valley by putting his clout in really shady association and nonprofit money

laundering schemes."

55.     On April 25, 2017, Plaintiff reported that Judge Towery was formerly a bigwig at the State Bar of California, involved in making billions in the Facebook case, that ripped the company away from the Winklevoss twins, only for the benefit of Judge Towery's "buddy" Thomas Girardi.  Plaintiff wrote: "Girardi was responsible for getting Towery hired at the Bar, where Towery Gave Girardi [and his law firm] a free pass on discipline based in conduct in the Dole Food company case, and based on Farmers Insurance class action, . . ."

56.     On April 27, 2017, Plaintiff published the article *Jailhouse Snitches, sexting, domestic violence and immigration scandals for santa clara county DA Jeff Rosen and Orange County DA Tony Rackackas—DA Mark Peterson next?*  The article discussed:

> [Defendant ROSEN had] slowly worked his cornies like Karen Sinunu Towery and Valerie Houghton into the county's family courts, where he has dutifully covered up police misconduct of the Santa Clara County Sheriffs, the San Jose Police and the Los Gatos Police Departments, where DUI ticket fixes, 49ers ticket kickbacks and protection of wife beating Silicon Valley CEOs . . . are just another day at the office for Rosen and his cronies.

57.     Plaintiff challenged readers to review a police report involving a famous football player alleged to have committed domestic violence and questioned why Defendant ROSEN was unable to secure a conviction.   Plaintiff wrote,

> As Rosen and his cronies spend hours pandering to immigration issues, the reality is they are ignoring the majority of the immigrant population in order to protect a corrupt family court, a broken jail system and celebrities and Silicon Valley tech execs and movie makers like Netflix. Rosen's family court cronies make Rackauckas seem like a rookie.

58.     On June 15, 2017, Plaintiff published the article *Silicon Valley: More family court sex scandals.*  The article criticized Defendant ROSEN for knowing that

**FIRST AMENDED COMPLAINT**

his staff had engaged in misconduct, including sexual harassment and abuse.  And that months after Defendant ROSEN dropped criminal rape charges against Ray McDonald, that McDonald was involved in another incident.   Plaintiff exposed Defendant ROSEN's connection to Judge Towery via his wife Karyn Sinunu-Towery.

59.    On August 31, 2017, Plaintiff photographed her colleague standing next to a United States flag in the hallway of the 8th floor of the Superior Court.  Plaintiff was arrested approximately three months later for taking the photograph.

60.    On October 16, 2017, Plaintiff attended a public meeting held by the Defendant COUNTY on the issue of domestic violence.   The meeting was conducted in the Superior Court's courthouse.  During the event, several deputies watched Plaintiff, intimidated her, and blocked her movements.

61.    On October 18, 2017, several members of the public and press made comments at the Defendant COUNTY's Public Safety and Justice Committee meeting, which was open to the public, and addressed problems within family law courts.

62.    On October 18, 2017, Plaintiff published an article criticizing Defendant ROSEN for regularly concealing evidence and allowing prosecutors in his office to engage in improper sexual relationships with judges, lawyers, and crime victims.

63.    On October 19, 2017, Plaintiff published the article *District Attorney Jeff Rosen in latest sex scandal on the bench.*  The article covered an alleged sex scandal allegedly involving Defendant ROSEN and Judge Vanessa Zecher, that occurred while she presided over a case Defendant ROSEN was prosecuting.  The article discussed that a citizen's reports to Defendant ROSEN's office that Judge Zecher's misconduct had been ignored.  The article stated:

> Leaked information from inside the DA's office shows Rosen became physically and verbally abusive as investigations got too close to him, telling one member of the public to "fuck off" and startling a cafeteria employee who observed Rosen's behavior.

64.     The article alleged that Defendant ROSEN had protected himself by giving kickbacks and favors to media outlets including the San Jose Mercury, where reporter Tracy Kaplan was given a free office to provide Defendant ROSEN with favorable publicity and news coverage.  The article alleged "Rosen's office has also been covering up corruption involving San Jose Police and Santa Clara County Sheriff . . ."

65.     On October 21, 2017, Plaintiff published an article about Defendant ROSEN alleging that he selectively prosecuted cases only to protect the wealthy in Silicon Valley.  Plaintiff criticized Defendant ROSEN for ignoring rape victims and refusing to prosecute a professional football player who reportedly committed domestic violence.  The article alleged Defendant ROSEN protected individuals connected to the "in crowd" that gave kickbacks to judges and lawyers, including Judge Towery.

***Plaintiff speaks at the County board meeting.***

66.     On November 14, 2017, Plaintiff spoke at the County Board of Supervisors public meeting and discussed her new publication *Ex Parte Media*. Plaintiff announced she would be releasing a report about the lack of transparency in Santa Clara County Superior Court and the lack of government accountability. Plaintiff expressed that she had been threatened by the sheriffs and was "not going to be threatened into not publishing" the report.

***Hours later, Plaintiff video records Deputy Gomez as he breaks her finger.***

67.     Two hours after Plaintiff spoke at the Defendant COUNTY's Board of Supervisors meeting, Plaintiff went to the Defendant COUNTY's Family Justice Center Courthouse ("FJCC") located at 201 N. First Street, San Jose, CA 95113, to conduct research in the public records viewing room.  The room has several public computers that allow members of the public to view records.  The Superior Court charges citizens to print the records at a rate of .50 cents per page.  The cost of printing a motion is cost inhibitive and the Superior Court does not provide citizens

with access to the records outside of the courthouse (e.g. online).  It has therefore become a long standing and customary practice for citizens, litigants, attorneys, attorney services, and journalists to take photos of the records available via the public viewing terminals rather than to pay .50 cents to print out each page.

68.     While Plaintiff and others were in the room, conducting research on the computers, and using their cellular phones to photograph the publicly available records, Defendant OLIVERI, who had been reassigned from Judge Towery's bailiff to work in surveillance at the courthouse, was watching Plaintiff on the courthouse's closed circuit video surveillance system.  Defendant Deputy OLIVERI dispatched three deputies to the public records viewing room.  Deputy OLIVERI and the other deputies he had dispatched to the public viewing room, including Deputy GOMEZ observed citizen Scott Largent using his cellular phone to take photographs of records available to the public.

69.     When deputies arrived in the public records viewing room, they became violent towards Mr. Largent and Plaintiff.  The deputies restrained Mr. Largent in a chair. Mr. Largent told the deputies they had no right to touch him.



70.    Plaintiff instinctively used the video recording feature on her cellular phone to record the activities of the deputies.

71.    That's when Defendant Deputy GOMEZ approached Plaintiff and the following dialogue ensued:

        [Deputy Gomez]    "Please stop recording."

        [Plaintiff]          "Right now, I am trying to do my job."

        [Deputy Gomez]    "Okay. Stop recording." (pointing finger at Plaintiff)

        [Plaintiff]          "Okay. I heard you."

72.    Without warning, Deputy Gomez grabbed and crushed Plaintiff's hand, caused multiple fractures to her finger, and confiscated Plaintiff's cellular phone. The dialogue continued:

        [Plaintiff]          "You just broke my finger."

        [Deputy Gomez]    "I did not break your finger."

        . . .

        [Plaintiff]          "I want my phone."

        [Deputy Gomez]    "You're not gonna get it."

        . . .

        [Plaintiff]          You are taking my phone.  That's an illegal search and seizure of my phone.

        . . .

        [Plaintiff]          You are withholding my property.

        [Deputy Gomez]    Tell me what a "search" is.

        [Plaintiff]          You are searching my phone.

        [Deputy Gomez]    How am I searching you phone? Am I going through your property?

**FIRST AMENDED COMPLAINT**

| | | |
|---|---|---|
| [Plaintiff] | You are holding my phone. |
| [Deputy Gomez] | You don't even know what you are talking about. |
| . . . | |
| [Plaintiff] | By the way you broke my finger.  Look at my finger. |
| [Deputy Gomez] | I'm not going to talk to you any further. |
| . . . | |
| [Plaintiff] | He has my phone.  I want my phone.  It is a journalistic phone.  I am doing research in here and he has my phone.  He is withholding my phone. |
| . . . | |
| [Plaintiff] | Stop pushing me around sir! |

73.     Joshua Seymour was present in the public records viewing room and used his cellular phone to record the incident.  Deputy Carrasco forced Mr. Seymour to erase his recordings.  Mr. Seymour was not charged with any crime.

74.     Mr. Largent, who had also taken photos in the public viewing room was not charged with any crime.



**FIRST AMENDED COMPLAINT**

*Deputy Rosen charges Plaintiff for conduct that does not constitute a crime.*

75.     On November 17, 2017, Defendant ROSEN and his office caused a criminal charge to be filed against Plaintiff for having taking a photo in the courthouse three months prior.  See *People v. Susan Bassi*, Case No. C1777801 ("Criminal Complaint").  Plaintiff was charged with one count of allegedly violating Cal. Penal Code §166(a)(4), for taking the photo depicted below, in the hallway of the courthouse on August 31, 2017.   The photo depicts Plaintiff's colleague standing next to a U.S. flag located in the hallway of the 8th Floor of the FJJC.



76.     The Criminal Complaint alleged Plaintiff willfully disobeyed Santa Clara County Superior Court's local rule, General Rule 2B, that generally prohibits taking photos inside of the courthouse.  And therefore violated a lawful court order of process.

77.     General Rule 2B on "Use of Recording Devices in Courthouse Facilities," provides in relevant part:

(3) MEDIA IN OTHER AREAS OF COURTHOUSE

Unless approved by written order of the Presiding Judge or the Supervising Judge of that courthouse, filming, videotaping, photographing and electronic recording of any kind is not permitted in any other part of the courthouse, including but not limited to, entrances, exits, halls, stairways, escalators and elevators. Application for permission for media coverage in these areas of the courthouse shall be directed to the Court's Public Information Officer, or another Court employee designated by the Court Executive Officer, who shall be responsible for coordinating approval or denial by the Presiding Judge or the Supervising Judge of that courthouse. The Court's Public Information Officer, or another Court employee designated by the Court Executive Officer, shall serve as the onsite manager for media relations and shall use professional judgment in determining appropriateness and permissibility of approved onsite media activities.

(Eff. 1/01/13)

Cameras and recording devices shall be turned off while being transported in any area of the court unless expressly permitted by court order. Filming, video taping and photographing of the interior of any courtroom through the glass door windows or through the double doors, or otherwise is prohibited. No recording devices shall be permitted in any courtroom unless the judge hearing a matter within the courtroom has expressly authorized such use in a written order pursuant to CRC 1.150 and this

Local Rule 2A.

B. USE OF RECORDING DEVICES GENERALLY PROHIBITED

This Rule 2B applies to all individuals, other than "Media" as defined by California Rules of Court, Rule 1.150(b)(2).

(1) COURTHOUSE FACILITIES

Any and all "photographing" and/or "recording" and/or "broadcasting" as defined by California Rules of Court, Rule 1.150(b) of people, things, conversations, or

proceedings is strictly prohibited in any courthouse facility, including but not limited to stairways, elevators, waiting areas, hallways, entrances, security screening stations, service areas, through windows, through doors, and with respect to any other accessible areas of courthouse facilities, whether access was intended or not, absent written order of the Supervising Judge of the specific courthouse facility. Any device that appears capable of photographing, recording, or broadcasting is subject to confiscation.

(2) COURT PROCEEDINGS a. Court proceedings may not be photographed, recorded, or broadcast, as defined by California Rules of Court, Rule 1.150(b), without express permission of the Court. Use of a recording device or broadcasting device of any type is not permitted in any courtroom unless the judge hearing a matter within the courtroom has expressly authorized the use of such device in a written order, or oral order on the record made during the hearing issue. Except upon approval by the judicial officer hearing the matter, all cell phones and other personal communication devices shall be turned off before entering the courtroom and stored out of sight. Any cell phone or personal communication device or device that appears capable of photographing, recording, or broadcasting which is visually observed in the courtroom is subject to confiscation.

(Effective 7/1/2017)

b. Courts have inherent supervisory or administrative duties to maintain orderly conduct of judicial proceedings. In that effort, Court security should warn all persons entering the courtroom to turn off all electronic devices. If a person is suspected of violating this rule, a further direct verbal warning should be given to the individual. In appropriate circumstances, court security may exercise its discretion to temporarily take custody of the electronic device until the person exits the court facility. If court security concludes that a recording has already occurred in violation of this rule or if the nature of the recording otherwise could jeopardize security of the facility, the safety of parties, witnesses, court personnel or judicial officers, court security may request that the recording be erased by the owner or may ask the owner for permission to access the device. If the owner refuses to erase the material or provide access, the

**FIRST AMENDED COMPLAINT**

1

2

3

4

5

6

7

deputy is authorized to temporarily retain the recording device while determining whether to seek a search warrant. If no application for a warrant is made or a warrant is declined, the device will be promptly returned to the owner. All applicable laws pertaining to search warrants shall apply. If the warrant issues, court security will retain the device as directed in the warrant and/or Penal Code section 1536. If the deputy finds probable cause to conclude that a violation of a court order or a crime has been committed, the matter shall be processed for possible arrest.

8

(Effective 7/1/2017)

9

C. VIOLATIONS

10

11

12

13

14

Any violation of this Local Rule or an order made under this Local Rule, or of California Rule of Court, Rule 1.150, is an unlawful interference with court proceedings and may be the basis for an order terminating media coverage, a citation for contempt of court, or an order imposing monetary or other sanctions as provided by law.

15   78.    Upon filing the Criminal Complaint, a warrant for Plaintiff's arrest was

16   issued and bail was set at $5,000.

17   ***Plaintiff is arrested for taking the photo of her colleague in the courthouse, thee***

18   ***months prior.***

19   79.    On the morning of December 4, 2017, Plaintiff went to the courthouse to

20   attend a critical hearing in her divorce case scheduled for 8:30 am.

21   80.     When Plaintiff entered the courthouse, Deputy Roger Winslow informed

22   Plaintiff that she was under arrest.   Deputy Winslow did not provide her with the

23   reason why she was being arrested nor did he inform her of her *Miranda* rights.

24   Deputy Winslow had a lengthy telephone call.  45 minutes later, Deputy Winslow

25   cited Plaintiff with a notice to appear in the criminal court pursuant to Cal. Penal Code

26   § 853.6, and released her from his custody.  The notice was  issued pursuant to

27   warrant number C177801 for violation of an unspecified court order and cited

28

21

California Penal Code §166(a)(4).  Deputy Winslow released Plaintiff at 9:15 am, causing Plaintiff to be late for a scheduled appearance in her divorce case.

***Plaintiff continues to engage in protected activities.***

81.    On January 27, 2018, Plaintiff published the article *San Jose Rotary called on to oust Karyn Sinunu Towery for Court Corruption, Rico, and Antitrust.*

82.    On February 2, 2018, Plaintiff published the article *Head of Santa Clara County's Family Violence Unit, Jim Demertzis, refuses to be recorded.*  The article was critical of Defendant ROSEN and the Santa Clara County Sheriff's Department for allegedly engaging an "unacceptable culture" of abusing and disrespecting women:

> Santa Clara County has taken millions in state and federal grants under the cover of protecting victims.  But the County is spending money violating the Brown Act, remodeling their Victim Services Department, but are too busy to answer the phone.
>
> . . .
>
> Attorney Nicole Ford colluded with attorney Elise Mitchell to let the abusive and admitted alcoholic McDonald out of a DVRO, as Ford went on to nominate herself for the head of the Santa Clara County Domestic Violence Committee Council.  Nicole Ford never protected her own client from domestic violence and now she wants to speak for all victims.

***Defendant ROSEN causes two additional criminal charges to be filed against Plaintiff.***

83.    On February 9, 2018, Defendant ROSEN's filed additional charges against Plaintiff for the incident on November 14, 2017, where Defendant Deputy GOMEZ broke Plaintiff's finger in courthouse's public records room.   Defendant ROSEN caused the Criminal Complaint to be amended to include two additional counts: (Count 2) for allegedly violating Cal. Penal Code §166(a)(4) and (Count 3) for allegedly violating Cal. Penal Code §148(a)(1).

84. Cal. Penal Code § 166(a)(4) provides:

> Willful disobedience of the terms, as written, of a process or court order or out-of-state court order, lawfully issued by a court, including orders pending trial.

85. Cal. Penal Code § 148 (a)(1) and (g) provides:

> (a)(1) Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

> (g) The fact that a person takes a photograph or makes an audio or video recording of a public officer or peace officer, while the officer is in a public place or the person taking the photograph or making the recording is in a place he or she has the right to be, does not constitute, in and of itself, a violation of subdivision (a), nor does it constitute reasonable suspicion to detain the person or probable cause to arrest the person.

***Plaintiff continues to engage in protected activities.***

86. On February 27, 2018, Plaintiff's then-divorce attorney Robert J. Tennant submitted a letter to Deputy District Attorney Johnene Stebbins. Mr. Tennant reported that Plaintiff's ex-husband and his counsel Brad Baugh had engaged in criminal activity, including deceit or collusion, with intent to deceive the court and knowingly procuring or offering a false or forged instrument to be filed.

***Defendant ROSEN causes an another criminal charge to be filed against Plaintiff.***

87. Defendant ROSEN's office charged Plaintiff with an additional crime (Count 4) alleging Plaintiff had violated Cal. Penal Code § 166(a)(4) for allegedly taking a photograph in the hallway of the 8th floor of the courthouse.

*Plaintiff investigates commissioner Nicole Ford's service on the Defendant COUNTY's Domestic Violence Council ("DVC").*

88.     At a certain point, Plaintiff uncovered that Defendant ROSEN's office maintains a referral list from which citizens are referred to private attorney's hand selected by Defendant ROSEN.  One of those attorneys is Defendant FORD, who serves not only as a commissioner for the Defendant COUNTY's Domestic Violence Council ("DVC") but also, as she describes it, "moonlights" as a family law attorney.

89.     Plaintiff also uncovered that Superior Court judicial officers frequently appoint FORD to serve as minor's counsel in family law cases.

90.     On May 4, 2018, Plaintiff attended a DVC meeting and was critical of Defendant FORD's service as a commissioner.

91.     On August 15, 2018, Plaintiff attended and spoke at the Defendant COUNTY's Board of Supervisor's meeting.  Plaintiff stated, "at this point in our community the greatest threat to our public safety and our justice system is the conduct of several people in that system related to free speech and journalists." Plaintiff discussed a Santa Clara County Judge who had been convicted for corruption.  And her belief that Defendant ROSEN was complicit.  Plaintiff questioned why officials have done nothing to investigate judges, including Judge Towery and his wife Sinunu Towery.   Plaintiff opined, "There is corruption in our county and our DA is more worried about his image and opinions in San Jose Mercury, than he is about investigating public corruption, the lawyers in his office, and the judges who may be acting improperly in our county."

92.     On November 29, 2018, Plaintiff filed the initial complaint in the within action.  (ECF No. 1.)

93.     On December 7, 2018, Plaintiff spoke at the Defendant COUNTY'S DVC meeting.  Plaintiff discussed an article in the San Francisco Chronicle that was critical of Defendant FORD's work as a commissioner.

94.     Later that day, the article *How to Ruin Your Ex Life and Make Your Lawyer Rich* was published.  The article featured a satirical image depicting Defendant FORD as a pig eating from a trough labeled "domestic violence."



95.     On December 17, 2018, Plaintiff went to the Victim Support Unit ("VSU") of the District Attorney's Office to request information and services.  The employees in the office were unwilling to speak with Plaintiff and denied public services to her.

***Plaintiff criticizes Defendants HALCON and FORD at public meeting.***

96.     On March 7, 2019, Plaintiff attended the Defendant COUNTY's Public Safety and Justice Committee meeting where public comments were taken regarding the DVC.   Defendants HALCON and FORD were in the audience.  Plaintiff alleged that the Victim Services Unit of Defendant ROSEN's office, which was managed by Defendant FORD, had been taking bribes and failing to provide services to victims of

crime.  At the conclusion of Plaintiff's public comments, Plaintiff looked towards HALCON's colleague Defendant FORD and stated, "Nicole Ford, you're next!"

97.    On March 14, 2019, Defendant ROSEN's chief assistant Jay Boyarsky held a press conference outside of the Santa Clara County Courthouse.  Mr. Boyarsky announced that his office had charged Carlos Carranza for murdering Bambi Larson. After concluding his initial statements, Mr. Boyarsky turned to members of the press, including Plaintiff, and asked, "Does anyone have any questions?" Mr. Boyarsky entertained several questions. Plaintiff asked Boyarsky: "What do you say about people who are critical about your office for giving a different standard for victims based on what you did in the St. Marten Rape Case?"



98.    Mr. Boyarsky responded:

> Ms. Bassi, as you know you are charged with criminal offenses by our office and it would be an ethical breach for me to have a conversation with someone who is charged with a crime here. So I cannot have any conversation with you Ms. Bassi.

99.    Mr. Boyarksy's statement was false and was used by Defendant ROSEN to form pretext for refusing Plaintiff to access the records and services of the District Attorney's Office.

100.    After the press conference, Plaintiff published the video *Santa Clara County top Prosecutor Jay Boyarsky "Policy" to Chill Speech.*

101.    On March 17, 2019, Plaintiff published an article *Divorce Files Show Abusive Judges and Lawyers – Corruption DAO, Halcon.* According to Defendant HALCON, the article contained criticisms of the VSU and that Plaintiff wrote:

> [A]t the core of the corruption is the Santa Clara County District Attorney's Office where the Director of Victim Services, Kasey Halcon, is reportedly working on a 'catch and kill' program designed to silence victims seeking help in the county's family courts . . . Halcon is reportedly working through private attorney Barbara Spector of Los Gatos.

102.    On April 4, 2019, Plaintiff attended a Public Safety and Justice Committee meeting and engaged in political speech critical of Mr. Boyarsky's service as a government official.

103.    On April 15, 2019, Plaintiff spoke at the County Board of Supervisors Meeting and criticized the VSU and Defendant HALCON.

104.    On May 30, 2019, Plaintiff was denied public services from the VSU.

***Defendants HALCON and FORD file lawsuits against Plaintiff to request civil harassment restraining orders against her.***

105.    On July 3, 2019, Defendants HALCON and FORD filed civil cases in the County of Santa Clara Superior Count to petition for civil harassment restraining orders against Plaintiff.  See *Halcon v. Bassi* 19CH008843 and *Ford v. Bassi* 19CH008843.  Defendants HALCON and FORD were represented in their civil actions by Defendant COUNTY's deputy counsel Ward Penfold.

106.   Defendant HALCON's and FORD's petitions for civil harassment restraining orders were accompanied by declarations that Defendants ROSEN, FORD, and HALCON executed under penalty of perjury.  Each of their declarations contained false statements and omissions about Plaintiff that were material.

107.   Defendant ROSEN also directed, instructed and advised investigator Jeffrey Nichols from his office, to execute a declaration in support of Defendant HALCON's and FORD's petitions.  Mr. Nichol's declaration contained false statements and omissions concerning Plaintiff.

108.   As a result of the conduct of Defendants ROSEN, HALCON, and FORD, temporary restraining order ("TROs") were issued against Plaintiff on July 3, 2019 to protect Defendant HALCON and FORD in their respective Superior Court cases 19CH00843 and 19CH00844.

109.   To date, the TROs remain active and contain the following personal conduct orders restraining Plaintiff from doing any of the following things to Defendants HALCON or FORD:

> (1) Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.
>
> (2) Contact the person, either directly or indirectly, in any way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means;
>
> (3) Take any action to obtain the person's address or location.

110.   The TROs contain stay-away orders that requiring Plaintiff to stay 300 yards away from Defendants FORD and HALCON, including their homes, jobs, workplaces, or vehicles.  Defendant FORD falsely claimed that she works at the FJJC, therefore the Superior Court issued a TRO restraining Plaintiff from entering the

courthouse, unless it is to attending one a hearing in a case in which Plaintiff is a party or subpoenaed to testify as a witness.   Defendant HALCON's workplace is located at the Santa Clara County Government Center ("Government Center"). Therefore pursuant to the TRO, Plaintiff is required to stay away from the Government Center.

***Defendant ROSEN causes three more criminal charges to be filed against Plaintiff.***

111.   On October 2, 2019, Defendant ROSEN caused to be amended the Criminal Complaint, to include additions counts as follows: for allegedly violating Cal. Penal Code § 166(a)(4) on September 10, 2019 (Count 5); on September 13, 2019 (Count 6); and September 19, 2019 (Count 7).

***Defendant ROSEN's office abuses his subpoena power to circumvent the the need for a search warrant to obtain data contained in Plaintiff's Gmail account.***

112.   On October 8, 2019, Defendant ROSEN caused a subpoena duces tecum ("SDT 1") to be issued from his office to Google, Inc. in the matter of *People v. Bassi* C1777801.  The purpose of the subpoena was to search the private and confidential data contained in Plaintiff's Gmail account.  The subpoena requested Google, Inc., produce:

a.   Any and all records regarding Plaintiff's email account gilroybassi@gmail.com;

b.   The name in which the account was registered;

c.   Information provided when the account was created (i.e. name, address, phone number, etc.);

d.   Name, date, time, and IP address used when the account was created;

e.   Any emails sent from this e-mail address to "khalcon@dao.sccgov.org" from July 23, 2019 to Present, including the originating IP address and the date and time of the e-mail;

f.   Any google internet search history from Plaintiff since July 23, 2019, with the words "Kasey Halcon" or "Nicole (Nichole) Ford";

g.   GPS location, date, and time from the google app associated to [Plaintiff's cellular phone number] when it was within 300 yards of 70 West Hedding Street, San Jose, CA 95110 from July 23, 2019 to Present.

113.   On November 14, 2019, Defendant ROSEN's office caused another subpoena duces tecum ("SDT 2") to be issued to Google, Inc. further requesting subscriber information relating to Plaintiff's Gmail account.

114.   On November 15, 2019, the criminal court conducted a hearing on whether to release to Defendant ROSEN's office the documents that he had caused to be subpoenaed pursuant to SDT 1.  At the hearing, Defendant ROSEN's office informed the criminal court that it was withdrawing the subpoena duces tecum issued to Google, Inc. And that as of November 15, 2018, Defendant ROSEN's office had not received a response from Google, Inc.  The criminal court ordered that if Google, Inc., provides responsive documents they are to be destroyed.  At the hearing, Defendant ROSEN's office failed to inform the criminal court that SDT 2 was issued immediately prior to the hearing, was not withdrawn, and remained pending.

115.   On December 23, 2019, Defendant ROSEN's office caused to be issued a third subpoena duces tecum ("SDT 3") to Google, Inc.

116.   At a subsequent hearing in *People v. Bassi*, C1777801, Defendant ROSEN's Deputy District Attorney Daniella Rich informed the criminal court that Google, Inc. responded to the subpoena by inadvertently producing the contents of Plaintiff's Gmail account, including Plaintiff's privilege communications with attorneys.   Ms. Rich stated that Google, Inc. inadvertently produced the documents directly to Deputy ROSEN's office, rather than to the criminal court.  Ms. Rich further stated Google, Inc. produced the documents directly to her via a hyperlink—which she contends she never opened.

117.   On September 17, 2020, Google, Inc. shipped a CD-ROM directly to Defendant ROSEN's office which contained private and confidential information from Plaintiff's Gmail account.



118.   On October 10, 2022, Defendant ROSEN submitted a brief in *People v. Bassi* C1777801, requesting termination of Plaintiff's diversion and that the criminal court reinstate the criminal proceedings against her.

119.   On November 2, 2022, Defendant ROSEN caused to be filed a memo in the criminal case he was prosecuting against Plaintiff.  The memo argued that Plaintiff had violated the terms of the TRO issued in Defendant FORD's civil harassment restraining order case against Plaintiff, because Plaintiff had allegedly had "been

transmitting false accusations against Ms. Ford to the Santa Clara County Bar Association."

120.   On January 24, 2023, Plaintiff and her associates began publishing the *Tainted Trials, Tarnished Headlines, Stolen Justice Series* in the Davis Vanguard based on Plaintiff's discovery of the BBMP. Additional articles in the series have been published reflecting nearly a decade of Plaintiff's newsgathering activities in Santa Clara County that occurred throughout the time of her personal divorce, the criminal prosecution, and as she and her associates were excluded from the BBMP, despite being on the court's press list since January 2017.

121.   On February 24, 2023, *People v. Bassi* C1777801 was dismissed. Plaintiff was not convicted of any crime.

122.   On April 19, 2023, California Court's Newsroom, an official publication of the Judicial Branch of California, released an article co-authored by Plaintiff: *Silicon Valley Judge Retires Amid Disclosure Scandal.*  The article explained:

> Santa Clara Superior Court has announced the termination of the controversial Bench-Bar-Media-Police Committee (BBMP), and that the committee's most recent chairperson, Judge James Towery, will officially retire from the bench on May 17, 2023.

123.   On April 26, 2018, Plaintiff timely submitted her claim for damages to the Defendant COUNTY pursuant to applicable sections of Cal. Government Code §§ 910, et seq.   A true and correct copy of the claim is attached as Exhibit 1.  On June 1, 2018, Defendant COUNTY rejected Plaintiff's claim.  A true and correct copy of the rejection letter is attached as Exhibit 2.

124.   On July 3, 2023, Plaintiff submitted an additional claim for damages to the Defendant COUNTY pursuant to applicable section of Cal. Government Code §§ 910, et seq.  A true and correct copy of the subsequent claim is attached as Exhibit 3. As of the date of filing this action, the Defendant COUNTY has not responded.

1
2
3
4

# FIRST CLAIM

## FIRST AMENDMENT RETALIATION

### Count 1

### *Against Defendant Rosen Individually*

125.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

126.   This count is brought under 42 U.S.C. § 1983 against Defendant ROSEN individually, for violations of Plaintiff's free speech rights guaranteed by the First and Fourteenth Amendments of the United States Constitution.

127.   At all times relevant Defendant ROSEN was and is the elected district attorney for the Defendant COUNTY.  At all times relevant, Defendant ROSEN was acting under color of state law.

128.   Plaintiff's Protected Activities: Plaintiff Susan Bassi engaged in constitutionally protected activities including news reporting, newsgathering, political speech, and petitioning the government for redress, as alleged *supra*.  Plaintiff publicly criticized and published content questioning Defendant ROSEN's leadership as the Defendant COUNTY's District Attorney.

129.   Defendant ROSEN's Retaliatory Investigation:  Defendant ROSEN reacted to Plaintiff's protected activities by launching a campaign ("Retaliatory Investigation") designed to harass, intimidate, and punish Plaintiff for engaging in protected activities.

130.   To implement the policies and execute the goals of his Retaliatory Investigation, Defendant ROSEN recruited, supervised, advised, and encouraged officials from his own office, the Defendant COUNTY, the Santa Clara Superior Court, and Santa Clara County Sheriff's Department to engage in conduct that Defendant ROSEN knew was violative of Plaintiff's civil rights, including without limitation, her rights under the First and Fourteenth Amendments of the United States Constitution.   Defendant ROSEN carried out his Retaliatory Investigation by:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    a.    Directing, instructing, encouraging, and advising investigators from his office's Bureau of Investigations, including investigator Jeffrey Nichols, to follow, monitor, harass, pressure, and intimidate Plaintiff because she had engaged in protected political speech that was critical of Defendant ROSEN's service as a government official;

    b.    Directing, instructing, encouraging, and advising officials including Defendants FORD and HALCON to initiate civil harassment restraining order cases against Plaintiff, to retaliate against Plaintiff for having engaged in protected speech activities critical of Defendants ROSEN's, FORD's, and HALCON's service as government officials.

    c.    Directing, instructing, encouraging, and advising officials including Defendants FORD and HALCON, investigator Jeffrey Nichols, Deputy District Attorney Daniella Rich, and Deputy County Counsel William Penfold, to execute declarations against Plaintiff that each of them knew contained false statements and material omissions about Plaintiff.

    d.    Drafting, executing, and causing to be filed in Defendant FORD's and HALCON's respective civil harassment restraining order cases, Defendant ROSEN's own witness declaration, executed under penalty of perjury, in which Defendant ROSEN knew contained false statements and omissions material to each case.

    e.    Directing, instructing, encouraging, and advising officials from his office's Victim Services Unit, including Defendant HALCON, to refuse public services to Plaintiff;

**FIRST AMENDED COMPLAINT**

    f.    Directing, supervising, advising, encouraging, and instructing officials from his office, including his chief assistant Jay Boyarsky to prevent Plaintiff from news gathering;

    g.    Preventing Plaintiff from gathering and uncovering news relating to the existence of Judge Towery's secret BBPM group, of which Defendant ROSEN was a member;

131.   Rosen's Retaliatory Investigation occurred proximate in time to Plaintiff's protected activities.

132.   Defendant Rosen's acts were in excess of his authority as an elected district attorney and in violation of his oath of office and duty to uphold state and federal laws, including the United States Constitution.   The primary intent of Defendant ROSEN's Retaliatory Investigation was to silence Plaintiff from continuing to engage in political speech that was critical of him and to prevent Plaintiff from gathering news relating to his misconduct as an elected official.

133.   Defendant ROSEN's Retaliatory Investigation would chill a person of ordinary firmness from continuing to engage in the constitutionally protected free speech activities that Plaintiff had engaged in.

134.   Plaintiff's protected free speech activities were a substantial or motivating factor in Defendant ROSEN's Retaliatory Investigation.

135.   Defendant ROSEN would not have conducted his Retaliatory Investigation against Plaintiff but for the fact that she had engaged in the aforementioned protected activities.

136.   Defendant ROSEN's conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

137.   Plaintiff seeks compensatory and punitive damages.

138.   Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988 and costs of suit.

**Count 2**

***Against Nicole Ford Individually***

139.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

140.   This count is brought under 42 U.S.C. § 1983 against Defendant FORD individually, for violations of Plaintiff's free speech rights guaranteed by the First and Fourteenth Amendments of the United States Constitution.

141.   At all times relevant Defendant FORD was an official of the Defendant COUNTY and was acting under color of state law.

142.   <u>Plaintiff's Protected Activities</u>: Plaintiff Susan Bassi was engaged in constitutionally protected activities including news reporting, newsgathering, political speech, and petitioning the government for redress, as alleged *supra*.

143.   Plaintiff publicly criticized and published content questioning Defendant FORD's leadership as commissioner of the Defendant COUNTY's Domestic Violence Council ("DVC").

144.   <u>Defendant FORD's Retaliatory Conduct</u>: Defendant FORD reacted to Plaintiff's protected activities by engaging in the following retaliatory conduct designed to harass, intimidate, and punish Plaintiff for engaging in protected activities that were critical of Defendant FORD.  In retaliation, Defendant FORD:

    a.   Initiated a civil harassment restraining order case against Plaintiff to retaliate against Plaintiff;

    b.   Executed a declaration in her own civil harassment restraining order case against Plaintiff, wherein the declaration contained false statements and material omissions about Plaintiff;

    c.   Executed a declaration against Plaintiff in support of Defendant HACLON's civil harassment restraining order case against Plaintiff, wherein the declaration contained false statements and material omissions about Plaintiff;

**FIRST AMENDED COMPLAINT**

1            d.     Made false reports about Plaintiff to Defendant ROSEN's office

2                  and the SCSD.

3            e.     Prevented Plaintiff from news gathering activities relating to the

4                  BBMP.

5            f.     Provided false and defamatory statements about Plaintiff to the

6                  media;

7       145.    Defendant FORD's retaliatory conduct occurred proximate in time to

8 Plaintiff's protected activities.

9       146.    Defendant FORD's acts were in excess of her authority as an official of

10 the Defendant COUNTY and in violation of her oath of office and duty to uphold state

11 and federal laws, including the United States Constitution.

12       147.    Defendant FORD's retaliatory conduct would chill a person of ordinary

13 firmness from continuing to engage in the constitutionally protected free speech

14 activities that Plaintiff had engaged in.

15       148.    Plaintiff's protected free speech activities were a substantial or

16 motivating factor in Defendant FORD's retaliatory conduct.

17       149.    Defendant FORD would not have engaged in the aforementioned

18 retaliatory conduct but for the fact that she had engaged in the aforementioned

19 protected activities.

20       150.    Defendant FORD's conduct was willful, wanton, malicious, and done

21 with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the

22 imposition of exemplary and punitive damages.

23       151.    Plaintiff seeks compensatory and punitive damages.

24       152.    Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988

25 and costs of suit.

26 **Count 3**

27 ***Against Kasey Halcon Individually***

28

153.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

154.   This count is brought under 42 U.S.C. § 1983 against Defendant HALCON individually, for violations of Plaintiff's free speech rights guaranteed by the First and Fourteenth Amendments of the United States Constitution.

155.   At all times relevant Defendant HALCON was an official of the Defendant COUNTY and was acting under color of state law.

156.   <u>Plaintiff's Protected Activities</u>: Plaintiff was engaged in constitutionally protected activities including news reporting, newsgathering, political speech, and petitioning the government for redress, as alleged *supra*.

157.   Plaintiff publicly criticized and published content questioning Defendant HALCON'S leadership as director of the Office of the District Attorney's Victim Services Unit ("VSU").

158.   <u>Defendant HALCON'S Retaliatory Conduct</u>: Defendant HALCON reacted to Plaintiff's protected activities by engaging in the following retaliatory conduct designed to harass, intimidate, and punish Plaintiff for engaging in protected activities that were critical of Defendant HALCON.  In retaliation, Defendant HALCON:

      a.    Initiated a civil harassment restraining order case against Plaintiff;

      b.    Executed a declaration in her own civil harassment restraining order case against Plaintiff, wherein the declaration contained false statements and material omissions about Plaintiff;

      c.    Executed a declaration against Plaintiff in support of Defendant FORD's civil harassment restraining order case against Plaintiff, wherein the declaration contained false statements and material omissions about Plaintiff;

      d.    Made false reports about Plaintiff to Defendant ROSEN's office and the SCSD;

e.     Prevented Plaintiff from news gathering activities relating to the

BBMP;

f.     Denied Plaintiff the public services of the VSU.

159.   Defendant HALCON's retaliatory conduct occurred proximate in time to Plaintiff's protected activities.

160.   Defendant HALCON's acts were in excess of her authority as an official of the Defendant COUNTY and in violation of her oath of office and duty to uphold state and federal laws, including the United States Constitution.

161.   Defendant HACLON's retaliatory conduct would chill a person of ordinary firmness from continuing to engage in the constitutionally protected free speech activities that Plaintiff had engaged in.

162.   Plaintiff's protected free speech activities were a substantial or motivating factor in Defendant HALCON's retaliatory conduct.

163.   Defendant HALCON would not have engaged in the aforementioned retaliatory conduct but for the fact that she had engaged in the aforementioned protected activities.

164.   Defendant HALCON's conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

165.   Plaintiff seeks compensatory and punitive damages.

166.   Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988 and costs of suit.

### Count 4

### *Against Deputy Oliveri Individually*

167.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

168.   This count is brought under 42 U.S.C. § 1983 against Defendant Deputy OLIVERI, individually, for violations of Plaintiff's free speech rights guaranteed by the First and Fourteenth Amendments of the United States Constitution.

169.   At all times relevant Defendant OLIVERI was an official of the Defendant COUNTY and its SCSD.   At all times relevant, Defendant OLIVERI was acting under color of state law.

170.   <u>Plaintiff's Protected Activities</u>: Plaintiff was engaged in constitutionally protected activities including news reporting, newsgathering, political speech, and petitioning the government for redress, as alleged *supra*.  Plaintiff publicly criticized and published content questioning Defendant Oliveri's leadership as a deputy for the Santa Clara County Sheriff's Department.  In 2016, Plaintiff's then-attorney submitted a complaint to SCSD about Defendant OLIVERI's conduct.

171.   <u>Defendant OLIVERI's Retaliatory Conduct</u>: Defendant OLIVERI reacted to Plaintiff's protected activities by engaging in the following retaliatory conduct designed to harass, intimidate, and punish Plaintiff for engaging in political speech critical of Defendant Oliveri's official conduct:

      a.     Monitoring Plaintiff;

      b.     Falsifying reports about Plaintiff;

      c.     Falsely reporting that Plaintiff was engaged in criminal activity.

      d.     Causing Plaintiff to be arrested for engaging in conduct that did not violate any criminal law.

172.   Defendant OLIVERI's retaliatory conduct occurred proximate in time to Plaintiff's protected activities.

173.   Defendant OLIVERI's acts were in excess of his authority as deputy of the SCSD and in violation of his oath of office and duty to uphold state and federal laws, including the United States Constitution.

174.   Defendant OLIVERI's retaliatory conduct would chill a person of ordinary firmness from continuing to engage in the constitutionally protected free speech activities that Plaintiff had engaged in.

175.   Plaintiff's protected free speech activities were a substantial or motivating factor in Defendant OLIVERI's retaliatory conduct.

176.   Defendant OLIVERI would not have engaged in the aforementioned retaliatory conduct but for the fact that she had engaged in the aforementioned protected activities.

177.   Defendant OLIVERI's conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

178.   Plaintiff seeks compensatory and punitive damages.

179.   Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988 and costs of suit.

### Count 5

### *Against Deputy Gomez Individually*

180.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

181.   This count is brought under 42 U.S.C. § 1983 against Defendant Deputy GOMEZ individually, for violations of Plaintiff's free speech rights guaranteed by the First and Fourteenth Amendments of the United States Constitution.

182.   At all times relevant Defendant GOMEZ was an official of the Defendant COUNTY and its SCSD.  At all times relevant, Defendant GOMEZ was acting under color of state law.

183.   Plaintiff's Protected Activities: Plaintiff was engaged in constitutionally protected activities including news reporting, newsgathering, political speech, and petitioning the government for redress, as alleged *supra*.

184.   On November ___, 2017, Plaintiff was lawfully videorecording Deputy GOMEZ's law enforcement activities.   Plaintiff's conduct is protected activity under the First Amendment of the United States Constitution.  And is also a protected activity pursuant Cal. Penal Code § 148(g) which provides:

> The fact that a person takes a photograph or makes an audio or video recording of a public officer or peace officer, while the officer is in a public place or the person taking the photograph or making the recording is in a place he or she has the right to be, does not constitute, in and of itself, a violation of subdivision (a), nor does it constitute reasonable suspicion to detain the person or probable cause to arrest the person.

185.   Defendant GOMEZ's Retaliatory Conduct: Defendant Deputy GOMEZ reacted to Plaintiff's protected activities by engaging in the following retaliatory conduct designed to harass, intimidate, and punish Plaintiff for engaging in protected activities that would expose Deputy Gomez's misconduct.   Deputy Gomez's retaliatory conduct included:

a.   Monitoring Plaintiff;

b.   Ordering Plaintiff to stop engaging in a protected activity;

c.   Battering Plaintiff;

d.   Breaking Plaintiff's finger;

e.   Seizing Plaintiff's person;

f.   Seizing Plaintiff's cellular phone;

g.   Searching Plaintiff's cellular phone without a warrant or probable cause;

h.   Falsely stating in reports that Plaintiff was engaged in criminal activity;

i.   Causing Plaintiff to be arrested for engaging in conduct that did not violate any criminal law; and

j.   Causing Plaintiff to be arrested without probable cause.

186.   Defendant GOMEZ's retaliatory conduct occurred proximate in time to Plaintiff's protected activities.

187.   Defendant GOMEZ's acts were in excess of his authority as a deputy of the County of Santa Clara Sheriff's Department and in violation of his oath of office and duty to uphold state and federal laws, including the United States Constitution. The primary intent of Defendant Gomez's retaliatory conduct was to silence Plaintiff from continuing to engage in protected activities, including gathering video footage of the illegal conduct engaged in by him and other deputies.   Defendant Gomez's retaliatory conduct was also intended to delete, obstruct, and conceal evidence that Plaintiff had recorded depicting the illegal conduct of Deputy GOMEZ and other deputies on November 14, 2017.

188.   At no time did Deputy GOMEZ have probable cause to arrest, detain, or to believe that Plaintiff had committed a crime.

189.   Defendant GOMEZ's retaliatory conduct would chill a person of ordinary firmness from continuing to engage in the constitutionally protected free speech activities that Plaintiff had engaged in.

190.   Plaintiff's protected free speech activities were a substantial or motivating factor in Defendant GOMEZ's retaliatory conduct.

191.   Defendant GOMEZ would not have engaged in the aforementioned retaliatory conduct but for the fact that Plaintiff had engaged in the aforementioned protected activities.

192.   Defendant GOMEZ's conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

193.   Plaintiff seeks compensatory and punitive damages.

194.   Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## SECOND CLAIM

## FOURTH AMENDMENT [ILLEGAL SEARCH AND SEIZURE]

## 42 U.S.C. § 1983

### *Count 1*

### *Against Jeffrey F. Rosen, individually.*

195.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

196.   This count is brought under 42 U.S.C. § 1983 against Defendant ROSEN individually, for violations of Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

197.   Defendant Rosen intentionally caused to be issued from his office, multiple subpoena duces tecum directing Google, Inc. to provide private, confidential, and privilege communications and data from Plaintiff's Gmail account.

198.   As a result, Defendant Rosen improperly received the aforementioned information relating to Plaintiff.

199.   Defendant Rosen's search of Plaintiff's Gmail account was unreasonable.

200.   The scope of the intrusion was severe.

201.   The manner in which Defendant ROSEN obtained access to Plaintiff's Gmail account was improper, unethical, and unreasonable.

202.   Defendant ROSEN lacked justification for initiating the search.

203.   At no time did Defendant ROSEN obtain a lawful search warrant to conduct the search.  Defendant ROSEN's search was not incident to a lawful arrest. Defendant ROSEN's search did not occur contemporaneously with an arrest.   Nor was Defendant ROSEN's search limited to a reasonable search of Plaintiff's person nor the immediate area within which Plaintiff might gain possession of a weapon or might destroy or hide evidence at the time of the search.

204.   Defendant ROSEN's search was obtained by the issuance of a subpoena duces tecum that his office caused to be improperly issued and service on Google,

Inc..   Defendant ROSEN authorized his office to execute an affidavit in support of the subpoena which contained one or more misrepresentations or omissions material to satisfying the legal requirements for issuance of such a subpoena.

205.   Defendant ROSEN authorized his office to make those misrepresentations or omissions either intentionally or with reckless disregard for the truth.

206.   Defendant ROSEN's conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

207.   Plaintiff seeks compensatory and punitive damages.

208.   Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988 and costs of suit.

### Count 2

### Against Deputy Gomez, individually.

209.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

210.   This count is brought under 42 U.S.C. § 1983 against Defendant Deputy GOMEZ individually, for violations of Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

211.   On November 14, 2017, Defendant GOMEZ intentionally searched Plaintiff's cellular phone without a search warrant.   The search was not reasonable.

212.   Defendant GOMEZ's search of Plaintiff's cellular phone was not incident to a lawful arrest.

213.   Defendant GOMEZ did not have probable cause to arrest Plaintiff.

214.   When Defendant Gomez's seized Plaintiff's cellular phone and began searching through data stored therein, the cellular phone was was not within Plaintiff's immediate control.  Defendant GOMEZ's search of Plaintiff's cellular phone data was

not conducted for the purpose of determining whether anyone might gain possession of a weapon or destructible evidence.

215.   Defendant GOMEZ did not actually arrest Plaintiff.

216.   Defendant GOMEZ's search of Plaintiff's cellular phone was unreasonable.

217.   The scope of the intrusion was severe.

218.   The manner in which Defendant GOMEZ obtained access to Plaintiff's cellular phone was unlawful, violent, improper, unethical, and unreasonable.

219.   Defendant GOMEZ lacked justification for initiating the search.

220.   At no time did Defendant GOMEZ obtain a lawful search warrant to conduct the search of Plaintiff's cellular phone data.  Nor did Defendant GOMEZ have and justification to conduct a search of the Plaintiff's cellular phone data without a warrant.

221.   Defendant GOMEZ's search of Plaintiff's cellular phone was not incident to a lawful arrest.  Defendant GOMEZ's search of the cellular phone did not occur contemporaneously with an arrest.   Nor was Defendant GOMEZ's search limited to a reasonable search of Plaintiff's person nor the immediate area within which Plaintiff might gain possession of a weapon or might destroy or hide evidence at the time of the search.

222.   Defendant GOMEZ's conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

223.   Plaintiff seeks compensatory and punitive damages.

224.   Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988 and costs of suit.

///

///

///

## THIRD CLAIM

## FOURTH AMENDMENT [EXCESSIVE FORCE] 42 U.S.C. §1983

### *Against Deputy Gomez individually.*

225.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

226.   This count is brought under 42 U.S.C. § 1983 against Defendant Deputy GOMEZ individually, for violations of Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

227.   On November 14, 2017, Defendant Deputy GOMEZ seized the Plaintiff's person;

228.   In seizing Plaintiff's person, Deputy GOMEZ acted intentionally;

229.   Deputy GOMEZ's seizure of Plaintiff's person was unreasonable.

230.   Defendant Deputy GOMEZ used excessive force against Plaintiff's person, thereby causing her finger to break.

231.   At no time did Plaintiff pose an immediate threat to the safety of Deputy Gomez, the other deputies, or to anyone else.

232.   Plaintiff was not actively resisting arrest nor was she attempting to evade arrest by flight.

233.   The use of force was unreasonable and unnecessary. Breaking Plaintiff's finger was unnecessary.

234.   At no time did Defendant GOMEZ attempt to temper or limit the amount of force.  At no time did Defendant GOMEZ warn Plaintiff of the imminent use of force.

235.   At no time was there probable cause for a reasonable officer to believe that Plaintiff had committed a crime, let alone a crime involving the infliction or threatened infliction of serious physical harm.

236.   Under all of the circumstances known to Deputy GOMEZ and the other deputies at the time, an objectively reasonable police officer would not conclude that

1   there was a fair probability that Plaintiff had committed or was committing any crime.

2       237.   Prior to the incident on November 14, 2017, Deputy GOMEZ was on

3   notice of the provisions of Cal. Penal Code §148(g).

4       238.   Defendant GOMEZ's conduct was willful, wanton, malicious, and done

5   with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the

6   imposition of exemplary and punitive damages.

7       239.   Plaintiff seeks compensatory and punitive damages.

8       240.   Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988

9   and costs of suit.

10                          **FOURTH CLAIM**

11   **FOURTH AMENDMENT [MALICIOUS PROSECUTION] 42 U.S.C. §1983**

12           ***Against Deputy Oliveri and Deputy Gomez, individually.***

13      241.   Plaintiff repeats each allegation set forth in this complaint as if set forth

14   fully herein.

15      242.   This count is brought under 42 U.S.C. § 1983 against Defendant Deputy

16   GOMEZ individually, for violations of Plaintiff's rights guaranteed by the Fourth and

17   Fourteenth Amendments of the United States Constitution.

18      243.   On November 14, 2017, Defendant GOMEZ caused to be initiated

19   criminal proceedings against Plaintiff without probable cause.   As a result, Plaintiff

20   was person was seized, detained, or arrested.

21      244.   Defendant OLIVERI's and GOMEZ's motive in instituting criminal

22   charges against Plaintiff was malicious and for a purpose other than bringing Plaintiff

23   to justice.

24      245.   Plaintiff obtained a favorable termination of the underlying criminal

25   prosecution.  Specifically, the criminal prosecution ended without a conviction.

26      246.   Defendant OLIVERI's and GOMEZ's conduct was willful, wanton,

27   malicious, and done with reckless disregard for the rights and safety of Plaintiff, and

28   therefore warrants the imposition of exemplary and punitive damages.

247.   Plaintiff seeks compensatory and punitive damages.

248.   Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## FIFTH CLAIM

## CONSPIRACY TO VIOLATE CIVIL RIGHTS

## 42 U.S.C. §§ 1983, 1985

### *Against Defendants Rosen, Ford, Halcon, Oliveri, Gomez, and Does 1-10.*

249.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

250.   Before or during the course of this incident, Defendants ROSEN, FORD, HALCON, OLIVERI, GOMEZ, and Does 1-10 conspired to and in fact did deprive Plaintiff of her aforementioned rights under the United States Constitution.

251.   All rights of Plaintiff were violated by Defendants ROSEN, FORD, HALCON, OLIVERI, GOMEZ, and Does 1-10 by their wrongful conduct as alleged *supra*.

252.   Defendants ROSEN, FORD, HALCON, OLIVERI, GOMEZ, and Does 1-10 conspired to and in fact did deprive Plaintiff of her right to equal protection of the laws and equal privileges and immunities under the laws because she had engaged in constitutionally protected activities as alleged *supra*.

253.   On information and belief, Defendants ROSEN, FORD, HALCON, OLIVERI, GOMEZ, and Does 1-10 agreed and conspired, and shared the same conspiratorial objective with each other to violate the aforementioned constitutional rights of Plaintiff.

254.   The conduct of Defendants ROSEN, FORD, HALCON, OLIVERI, GOMEZ, and Does 1-10 was malicious, oppressive, and in reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants ROSEN, FORD, HALCON, OLIVERI, GOMEZ, and Does 1-10.

255.   Plaintiff seeks compensatory and punitive damages.

256.   Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## SIXTH CLAIM

## MUNICIPAL LIABILITY [FINAL DECISION MAKER]

## 42 U.S.C. § 1983

### Against County of Santa Clara for the acts of Jeffrey F. Rosen

257.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

258.   At all material times, Defendant ROSEN acted under color of the law and as the final decision and policymaker with respect to his office's prosecution of Plaintiff in *People v. Susan Bassi*, C1777801.

259.   Defendant ROSEN's acts deprived Plaintiff of her particular rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution.

260.   Defendant ROSEN was the person who actually made the decision/committed the acts/or later personally ratified the decisions/acts that led to the deprivation of Plaintiff's constitutionally protected rights.

261.   Defendant ROSEN's acts and decisions were a conscious and deliberate choice to follow a course of action from among various alternatives; and he made the decisions/committed the acts, or approved the decisions/acts with knowledge of that such actions would deprive Plaintiff of constitutionally protected rights.

262.   Defendant ROSEN ratified the decisions by knowing the unlawful reason for the decision and personally approved it after it had been made.

263.   Plaintiff publicly criticized and published content questioning Defendant ROSEN's leadership as the elected District Attorney for Santa Clara County. Defendant ROSEN retaliated against Plaintiff by causing, directing, managing, overseeing, and instructing deputy district attorneys and other officials from his office and the Defendant COUNTY to assist him in prosecuting Plaintiff ("Retaliatory

Prosecution").  The Retaliatory Prosecution was conducted for the purpose of
punishing Plaintiff for engaging in political speech, gathering news, and reporting on
information adverse to Defendant ROSEN.   The Retaliatory Prosecution was carried
out with the intention of preventing Plaintiff from continuing to engage in protected
activities adverse to Defendants ROSEN, HALCON, and FORD.  To implement the
policies and execute the goals of the Retaliatory Prosecution, Defendant ROSEN:

     a.    On November 17, 2017, caused to be filed a criminal complaint
against Plaintiff for conduct that does not constitute a crime and
caused the criminal court to issue a warrant for her arrest;

     b.    On February 7, 2018, caused to be filed a criminal complaint
against and selectively prosecuting her for taking photos within a
courthouse, conduct that does not a crime, and conduct that
individuals frequently engage in but are not prosecuted for.  And
for requesting a warrant for her arrest.

     c.    On October 8, 2019, caused to be issued a subpoena duces tecum
("SDT 1") in Criminal Case No. C1777801 requiring the custodian
of records of Google, Inc., to produce  "any and all records
regarding email gilroybassi@gmail.com" including the name the
account was registered under, when the account was created, the IP
addressed used to create the account, name, address, phone
number, any and all emails sent to khalcon@dao.sccgov.org from
July 23, 2019 to the date the subpoena was issued.   Any google
internet search history from Susan Bassi since July 23, 2019, with
the words "Kasey Halcon" or "Nicole (Nichole) Ford", GPS
location, date, and time from the google app associates with 831-
320-6421 when it was within 300 yards of 70 West Hedding Street,
San Jose, CA 951210 from July 23, 2019 to the date of the

1    subpoena.    The records were requested to be produced on

2    11/15/19 at 9am.

3    d.    On October 10, 2019, by causing an amended criminal complaint

4    in case C1777801, with three additional counts of violating Cal.

5    Penal Code §166(a)(4), for having sent emails to Kasey Halcon on

6    September 10, 13, and 19, in violation of the TROs in an unrelated

7    civil case.

8    e.    On October 8, 2019, causing Deputy District Attorney Daniella

9    Rich to execute a declaration in support of SDT 1 containing the

10    false statement: "Such record(s) are necessary to further the public

11    interest in prosecuting the defendant as they are likely to contain

12    relevant and material evidence on the issue of guilt or innocent of

13    the defendant in the above-entitled case and there exists good

14    cause for the production of the above records."

15    f.    On September 22, 2019, receiving directly from Google, Inc.,

16    confidential and private data from Plaintiff's Gmail account.

17    g.    Refusing the Plaintiff the services of the District Attorney's Office

18    h.    Preventing Plaintiff from news gathering and access to the District

19    Attorney's Office by refusing to communicate with Plaintiff and

20    instructing his staff and other officials not to communicate with

21    Plaintiff.

22    i.    Preventing Plaintiff from gathering news and public records.

23    264.   Defendant ROSEN had final policymaking authority from Defendant

24    COUNTY concerning his aforementioned conduct.

25    265.   When Defendant ROSEN engaged in these acts, he was acting as a final

26    policymaker for Defendant COUNTY.

27    266.   The acts of Defendant ROSEN acts caused the deprivation of Plaintiff's

28    rights; that is, Defendant ROSEN's acts were so closely related to the deprivation of

1 | the Plaintiff's rights as to be the moving force that caused the ultimate injury.

2 | 267.   Defendant ROSEN's acts were a substantial factor in causing Plaintiff's

3 | injuries.

4 | 268.   Plaintiff seeks compensatory damages.

5 | 269.   Plaintiff also seeks statutory attorney's fees pursuant to 42 U.S.C. § 1988

6 | and costs of suit.

## SEVENTH CLAIM

## MALICIOUS PROSECUTION (STATE LAW)

***Against Defendants Rosen, Ford, and Halcon, and Does 1-10 individually.***

270.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

271.   Plaintiff claims that Defendants ROSEN, FORD, HALCON,  OLIVERI, and GOMEZ and Does 1-10 wrongfully caused to criminal proceedings to be initiated against Plaintiff.

272.   Defendants ROSEN, FORD, HALCON, OLIVERI, and GOMEZ and Does 1-10 were actively involved in causing Plaintiff to be arrested, prosecuted for, and for causing the continuation of the prosecution; for conduct that did not constitute a crime.

273.   The criminal proceedings against Plaintiff ended in her favor and without conviction.

274.   No reasonable person in the same circumstances as Defendant ROSEN, FORD, HALCON, OLIVERI, and GOMEZ and Does 1-10 would have believed that there were grounds let alone probable cause for Plaintiff to be arrested and prosecuted.

275.   Defendant ROSEN, FORD, HALCON, OLIVERI, and GOMEZ and Does 1-10 acted primarily for a purpose other than to bring Plaintiff to justice.

276.   Plaintiff was harmed.

277.   The conduct of Defendant ROSEN, FORD, HALCON, OLIVERI, and GOMEZ, and Does 1-10 conduct was a substantial factor in causing Plaintiff's harm.

278.   The conduct of Defendants ROSEN, FORD, HALCON, OLIVERI, GOMEZ, and Does 1-10 was malicious, oppressive, and in reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants ROSEN, FORD, HALCON, OLIVERI, GOMEZ, and Does 1-10.

279.   Plaintiff seeks compensatory and punitive damages.

## EIGHTH CLAIM

## ABUSE OF PROCESS (STATE LAW)

### *Against Defendants Rosen and the County of Santa Clara*

280.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

281.   Plaintiff claims that Defendant ROSEN wrongfully directed, instructed, and caused to be issued subpoena duces tecum to Google, Inc.

282.   As a result, Defendant ROSEN's office directly received documents from Google, Inc. relating to private information about Plaintiff.

283.   That Defendant ROSEN intentionally used the subpoenas duces tecum to unlawfully obtain confidential and private information about Plaintiff through a procedure that was not designed for the purpose of conducting discovery in a criminal proceeding.

284.   Plaintiff was harmed as a result of Defendant ROSEN's aforementioned conduct.

285.   Defendant ROSEN's conduct was a substantial factor in causing Plaintiff's harm.

286.   The conduct of Defendant ROSEN was malicious, oppressive, and in reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants ROSEN.

287.   Plaintiff seeks compensatory and punitive damages.

# NINTH CLAIM

## BATTERY (CAL. GOVT. CODE § 820)

### *Against Deputy Gomez and the County of Santa Clara.*

288.    Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

289.    At all material times, Defendant GOMEZ was acting under color of state law and within the course and scope of his employment with SCSD.  Including on November 14, 2017, when Defendant GOMEZ intentionally grabbed Plaintiff and caused injuries to her hand by breaking her finger.

290.    The force used against Plaintiff was unreasonable to arrest or prevent escape or to overcome resistance.  Plaintiff was unarmed, did not pose an imminent threat of death or serious bodily injury, was not resisting arrest or detention, was not attempting to escape arrest or detention, was not a suspect in a crime, did not commit a crime, and never threatened anyone either physically or verbally.

291.    Plaintiff did not consent Defendant GOMEZ's the use of force.

292.    Plaintiff was harmed when Defendant GOMEZ grabbed and crushed Plaintiff's hand, causing multiple fractures to her finger.  Plaintiff experienced severe pain and suffering, injury, harm, and damages.

293.    Defendant GOMEZ's use of unreasonable force was the direct cause, proximate cause, and the only cause of Plaintiff's pain and suffering, injury, harm, and damages.  In other words, the unreasonable force was a substantial factor in causing Plaintiff's pain and suffering, injury, harm, and damages.

294.    Defendant GOMEZ had no legal justification for using force against Plaintiff, and the use of force was unreasonable and non-privileged.  Moreover, Plaintiff did not knowingly or voluntarily consent to the use of force against her.

295.    As a direct and proximate result of the aforesaid acts and omissions of Defendant GOMEZ, Plaintiff suffered great physical and mental injury, pain and suffering, harm, and damages.

296.   The conduct of Defendant GOMEZ was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling Plaintiff to an award of exemplary and punitive damages.

297.   Defendant GOMEZ is directly liable for his actions and inactions pursuant to Cal. Government Code § 820(a).

298.   Defendant COUNTY is vicariously liable for the wrongful acts of Defendant GOMEZ pursuant to Cal. Government Code § 815.2, which provides that a public entity is liable for injuries caused by its employees within the scope of the employment if the employees' acts would subject them to liability.

299.   Plaintiff seeks compensatory and punitive damages.

## TENTH CLAIM

## VIOLATIONS OF CALIFORNIA'S BANE ACT

## CAL. CIVIL CODE § 52.1

### *Against Defendants Gomez and Santa Clara County.*

300.   Plaintiff repeats each allegation set forth in this complaint as if set forth fully herein.

301.   Defendant GOMEZ was acting under the color of state law and within the course and scope of his employment with SCSD.

302.   The Bane Act, the California Constitution and California common law prohibit the use of excessive force by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action for such claims.

303.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person, including a police officer, from interfering with another person's exercise or enjoyment of her constitutional rights by threats, intimidation, or coercion, including by the use of unconstitutionally excessive force. Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights, which can be inferred by a reckless disregard for the person's civil rights.

304.   On November 14, 2017, Defendant GOMEZ seized Plaintiff when he grabbed and crushed Plaintiff's hand, causing injuries including multiple fracture's to Plaintiff's finger.

305.   Defendant GOMEZ issued no commands or warnings immediately before he battered Plaintiff.  Defendant GOMEZ failed to de-escalate the situation or formulate an adequate tactical plan to resolve the incident without the use of force.

306.   Defendant GOMEZ had no information that Plaintiff committed any crime; Defendant GOMEZ had no information that anyone was injured; Plaintiff never verbally threatened Defendants GOMEZ, the other involved officers, or anyone else.  Defendant GOMEZ had no information that Plaintiff ever verbally threatened anyone; Plaintiff never attempted to harm either Defendant GOMEZ or anyone else; Plaintiff never attempted to harm anyone prior to Defendant's use of force against her; Plaintiff never had an object in her hands that could be perceived as a weapon or made any motions toward anyone with a weapon; and Plaintiff never made any threatening movements toward anyone.

307.   At all times prior to Defendant GOMEZ's use of force, no other person was at risk of immediate death of serious bodily injury based on Plaintiff's actions;

308.   Defendant GOMEZ had time to issue proper commands to Plaintiff and/or other persons; Defendant GOMEZ had time to allow Plaintiff to comply with commands if they were given; Defendant GOMEZ could have employed less intrusive options; there were several other reasonable alternatives to the use of force available to Defendant GOMEZ; and Defendant GOMEZ failed to exhaust all reasonable alternatives to the use of force.

309.   Defendant GOMEZ violated Plaintiff's Constitutional right to be free from excessive and unreasonable force by police officers. Defendant GOMEZ intended to violate Plaintiff rights and/or acted with reckless disregard with regard to Plaintiff's Constitutional rights, which is evidence that Defendant GOMEZ intended to violate Plaintiff rights.

310.   Defendant GOMEZ acted violently against Plaintiff in violation of her rights.

311.   Plaintiff was caused to suffer severe pain and suffering. The conduct of Defendant GOMEZ was a substantial factor in causing the harm, losses, injuries, and damages of Plaintiff.

312.   Defendant COUNTY is vicariously liable for the wrongful acts of Defendant GOMEZ pursuant to Cal. Government Code § 815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him to liability.

313.   The conduct of Defendant GOMEZ was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling him to an award of exemplary and punitive damages.

314.   Plaintiff seeks compensatory damages, punitive damages, costs, attorneys' fees, and treble damages under this claim.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff requests entry of judgment in her favor against Defendant COUNTY OF SANTA CLARA, JEFFREY F. ROSEN, NICOLE FORD, KASEY HACLON, BRYAN OLIVERI, DAVID GOMEZ, AND DOES 1-10, inclusive, as follows:

1.     For compensatory damages according to proof at trial.

2.     For punitive and exemplary damages against the individual defendants in an amount to be proven at trial.

3.     For statutory damages.

4.     For reasonable attorneys' fees including litigation expenses.

5.     For costs of suit and interest incurred herein.

For such other and further relief as the Court may deem just and proper.

1

## <u>**DEMAND FOR JURY TRIAL**</u>

2

Pursuant to Fed. R. Civ. P. 38(b) and Local Rule 3-6(a) Plaintiff hereby

3

demands a trial by jury.

4

5

6

Respectfully submitted,

7

8

DATED:  August 8, 2023

FAMILY LEGAL,  A Professional Law
Corporation

9

10

11

By:  _____

12

Edward M. Lyman III
Attorney for Plainitff Susan Bassi

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**