1  TONY LOPRESTI, County Counsel (S.B. #289269)
JOSÉ L. MARTINEZ, Deputy County Counsel (S.B. #318540)
2  OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
3  San José, California  95110-1770
Telephone: (408) 299-5900
4  Facsimile:  (408) 292-7240

5  Attorneys for Defendants
COUNTY OF SANTA CLARA, JEFFREY F.
6  ROSEN, KASEY HALCÓN, DAVID GOMEZ, and
BRYAN OLIVERI

7

8                  UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
9                      (San Francisco Division)

10

11  SUSAN HAZLETT BASSI,                     No. 18-CV-07239 SI

12              Plaintiff,                   **DEFENDANTS' NOTICE OF MOTION
                                            AND MOTION TO DISMISS PLAINTIFF'S
13  v.                                       FIRST AMENDED COMPLAINT;
                                            MEMORANDUM OF POINTS AND
14  COUNTY OF SANTA CLARA, et al.,           AUTHORITIES**

15              Defendants.                  Date:     October 27, 2023
                                            Time:     10:00 a.m.
16                                           Ctrm:     1 - 17th Floor (via Zoom)
                                            Judge:    The Honorable Susan Illston
17

18

19

20

21

22

23

24

25

26

27

28

                                     1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **October 27, 2023 at 10:00 a.m.,** or as soon thereafter as the matter may be heard, in **Courtroom 1** of the United States District Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants County of Santa Clara ("County"), Jeffrey F. Rosen, Kasey Halcón, David Gomez, and Bryan Oliveri will move the court pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) for an order dismissing Plaintiff Susan Hazlett Bassi's First Amended Complaint.  This motion is based on the following grounds:

- The First Cause of Action for First Amendment retaliation under 42 U.S.C. § 1983 is time-barred as to Rosen and Halcón, and fails to state a claim as to Rosen, Halcón, Gomez, or Oliveri.

- The Second Cause of Action for illegal search and seizure under the Fourth Amendment pursuant to 42 U.S.C. § 1983 is barred by the doctrine of prosecutorial immunity and time-barred as to Rosen, and barred by qualified immunity as to Gomez.

- The Fourth Cause of Action for malicious prosecution under 42 U.S.C. § 1983 is inadequately pled and, further, is barred as a matter of law as to Oliveri and Gomez because Plaintiff alleges the existence of probable cause.

- The Fifth Cause of Action for conspiracy to violate civil rights under 42 U.S.C. § 1985 is inadequately pled as to Rosen, Halcón, Oliveri, and Gomez.

- The Sixth Cause of Action for municipal liability against the County under 42 U.S.C. § 1983 is barred as a matter of law because it is based on the conduct of Rosen in his capacity as a state official and, further, is inadequately pled.

- The Seventh Cause of Action for malicious prosecution under California law is barred by the doctrine of prosecutorial immunity as to Rosen; barred as to Halcón because Plaintiff cannot satisfy the favorable-termination pleading requirement; and barred as to Oliveri and Gomez because Plaintiff alleges the existence of probable cause.

///
///

1    •    The Eighth Cause of Action for abuse of process under California law is barred by the

2         doctrine of prosecutorial immunity, statute of limitations, and California's litigation

3         privilege as to Rosen, and barred by Cal. Gov't Code § 815(a) as to the County.

4    This motion is based on this Notice, the Memorandum of Points and Authorities filed

5    herewith, the files and pleadings in this action, and on such other matters as the Court may deem

6    necessary and proper.

7                                               Respectfully submitted,

8    Dated:  September 6, 2023                   TONY LOPRESTI
                                                 COUNTY COUNSEL
9

10                                      By:  */s/ José L. Martinez*
                                             JOSÉ L. MARTINEZ
11                                           Deputy County Counsel

12                                           Attorneys for Defendants
                                             COUNTY OF SANTA CLARA, JEFFREY F.
13                                           ROSEN, KASEY HALCÓN, DAVID GOMEZ,
                                             and BRYAN OLIVERI
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND ........................................................................................................ 1

    A.  Factual Allegations........................................................................................... 1

    B.  Procedural Posture ........................................................................................... 3

III.  LEGAL STANDARD................................................................................................. 4

IV.  ARGUMENT ............................................................................................................. 5

    A.  PLAINTIFF'S FIRST CAUSE OF ACTION FAILS. ........................................... 5

        1.  The First Cause of Action is time-barred as to Rosen and Halcón. ........... 5

            a.  The applicable limitations period for Plaintiff's allegations against Rosen and Halcón expired well before the FAC's filing. .. 5

            b.  Plaintiff's untimely claims against Rosen and Halcón do not relate back to her initial complaint................................................. 7

                (i)  Plaintiff's new causes of action do not relate back under Rule 15(c)(1)(A). ............................................................. 8

                (ii)  Plaintiff's new causes of action do not relate back under Rule 15(c)(1)(C). ............................................................. 8

        2.  Plaintiff does not adequately allege her First Cause of Action against any County Defendant. .............................................................10

    B.  PLAINTIFF'S SECOND CAUSE OF ACTION FAILS. ....................................12

        1.  Plaintiff's Second Cause of Action against Rosen is barred by prosecutorial immunity and the statute of limitations. .............................12

        2.  Plaintiff's Second Cause of Action against Gomez is barred by qualified immunity...................................................................................13

            a.  The issue of qualified immunity should be decided as early as possible. .......................................................................................13

            b.  Plaintiff did not have a clearly established right to be free from a warrantless search during the November 2017 FJC incident......14

    C.  PLAINTIFF'S FOURTH CAUSE OF ACTION FAILS. ....................................16

    D.  PLAINTIFF'S FIFTH CAUSE OF ACTION FAILS.........................................18

    E.  PLAINTIFF'S SIXTH CAUSE OF ACTION FAILS. ........................................19

        F.      PLAINTIFF'S SEVENTH CAUSE OF ACTION FAILS.....................................22

        G.      PLAINTIFF'S EIGHTH CAUSE OF ACTION FAILS. .....................................24

V.      CONCLUSION .............................................................................................................25

# TABLE OF CONTENTS

Page

## CASES

*Adams v. Superior Court,*
2 Cal. App. 4th 521 (1992)............................................................................25

*Alapati v. City & Cnty. of S.F.,*
No. 21-cv-04144-SI, 2022 WL 991724 (N.D. Cal. Apr. 1, 2022) ..................25

*AmerisourceBergen Corp. v. Dialysist W., Inc.,*
465 F.3d 946 (9th Cir. 2006)........................................................................... 5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................................................... 5

*Awabdy v. City of Adelanto,*
368 F.3d 1062 (9th Cir. 2004)...................................................................16, 17

*Babb v. Superior Court,*
3 Cal. 3d 841 (1971).......................................................................................23

*Bd. of Trs. of Leland Stanford Jr. Univ. v. Superior Court,*
149 Cal. App. 4th 1154 (2007)........................................................................ 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).......................................................................................... 5

*Benavidez v. Cnty. of San Diego,*
993 F.3d 1134 (9th Cir. 2021).........................................................................20

*Bidari v. Kelk,*
90 Cal. App. 5th 1152 (2023)..........................................................................24

*Broam v. Bogan,*
320 F.3d 1023 (9th Cir. 2003).........................................................................12

*Butler v. Nat'l Cmty. Renaissance of Cal.,*
766 F.3d 1191 (9th Cir. 2014).......................................................................7, 8

*C.A. v. William S. Hart Union High Sch. Dist.,*
53 Cal. 4th 861 (2012) ...................................................................................25

*City of Escondido v. Emmons,*
139 S. Ct. 500 (2019)......................................................................................14

*Coleman v. Gulf Ins. Grp.,*
41 Cal. 3d 782 (1986).....................................................................................24

*Cotton v. Cnty. of San Bernadino,*
No. EDCV 15-2314-VAP (AGR), 2016 WL 7187442 (C.D. Cal. Nov. 9, 2016).............20

*Dei Gratia v. Stafford,*
No. 14-cv-04019-LHK, 2015 WL 332633 (N.D. Cal. Jan. 23, 2015).............................23

iii

*Dist. of Columbia v. Wesby*,
    138 S. Ct. 577 (2018) ................................................................................................ 14

*Dougherty v. City of Covina*,
    654 F.3d 892 (9th Cir. 2011) .................................................................................... 20

*Eberhard v. Cal. Highway Patrol*,
    73 F. Supp. 3d 1122 (N.D. Cal. 2014) ...................................................................... 10

*Evans v. Skolnik*,
    997 F.3d 1060 (9th Cir. 2021) ...................................................................... 13, 14, 16

*Ezor v. Lacey*, No. 19-4020-JVS (AGR),
    2021 WL 942747 (C.D. Cal. Mar. 12, 2021) ...................................................... 12, 24

*Flynn v. City of Santa Clara*,
    388 F. Supp. 3d 1158 (N.D. Cal. 2019) ............................................................. 10, 11

*G.F. Co. v. Pan Ocean Shipping Co., Ltd.*,
    23 F.3d 1498 (9th Cir. 1994) .................................................................................. 8, 9

*Garmon v. Cnty. of L.A.*,
    828 F.3d 837 (9th Cir. 2016) .................................................................................... 12

*Gillette v. Delmore*,
    979 F.2d 1342 (9th Cir. 1992) ............................................................................ 21, 22

*Hamby v. Hammond*,
    821 F.3d 1085 (9th Cir. 2016) .................................................................................. 14

*Hartman v. Moore*,
    547 U.S. 250 (2006) ............................................................................................ 21, 23

*Harvey v. City of Fresno*,
    No. 1:08-CV-01399-OWW-DLB, 2009 WL 3157524, (E.D. Cal. Sept. 28, 2009) .......... 20

*Hawkins v. Pac. Coast Bldg. Prod., Inc.*,
    124 Cal. App. 4th 1497 (2004) ................................................................................. 8

*Hernandez v. City of San José*,
    897 F.3d 1125 (9th Cir. 2018) .................................................................................. 13

*Hiramanek v. Clark*,
    No. 5:13-cv-00228-RMW, 2016 WL 4549153 (N.D. Cal. Sept. 1, 2016) ................ 15, 16

*Horton by Horton v. City of Santa Maria*,
    915 F.3d 592 (9th Cir. 2019) ............................................................................. 13, 14

*Hunter v. Bryant*,
    502 U.S. 224 (1991) ................................................................................................ 13

*Imbler v. Pachtman*,
    424 U.S. 409 (1976) .......................................................................... 12, 21, 23, 24

*Karim-Panahi v. L.A. Police Dep't*,
    839 F.2d 621 (9th Cir. 1988)..........................................................................................19

*Kerr-McGee Chem. Corp. v. Superior Court*,
    160 Cal. App. 3d 594 (1984)........................................................................................ 8

*Kilkenny v. Arco Marine Inc.*,
    800 F.2d 853 (9th Cir. 1986)........................................................................................ 9

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018)................................................................................................14

*Klarfield v. U.S.*,
    944 F.2d 583 (9th Cir. 1991)......................................................................................15

*Klein v. City of Beverly Hills*,
    865 F.3d 1276 (9th Cir. 2017)................................................................................5, 12

*Kroessler v. CVS Health Corp.*,
    977 F.3d 803 (9th Cir. 2020)........................................................................................ 5

*Lacey v. Maricopa Cnty.*,
    693 F.3d 896 (9th Cir. 2012)..................................................................................17, 18

*Lassiter v. City of Bremerton*,
    556 F.3d 1049 (9th Cir. 2009)......................................................................................17

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001)........................................................................................ 5

*Maleti v. Wickers*,
    82 Cal. App. 5th 181 (2022)........................................................................................23

*Mallard v. Progressive Choice Ins. Co.*,
    188 Cal. App. 4th 531 (2010)......................................................................................25

*Milstein v. Cooley*,
    257 F.3d 1004 (9th Cir. 2001)......................................................................................23

*Minn. v. Dickerson*,
    508 U.S. 366 (1993)....................................................................................................15

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985).....................................................................................................13

*Monell v. Dep't of Soc. Servs. of the City of N.Y.*,
    436 U.S. 658 (1978)..............................................................................................*passim*

*Morales v. City of L.A.*,
    214 F.3d 1151 (9th Cir. 2000)........................................................................................ 5

*Nghiem v. Santa Clara Univ.*,
    No. 21-cv-06872-BLF, 2023 WL 3012494 (N.D. Cal. Mar. 20, 2023)........................7, 8

v

*Pagtakhan v. Doe*,
No. C 08-2188 SI (pr), 2013 WL 12440998 (N.D. Cal. Nov. 21, 2013) .........................25

*Pallas v. Accornero*,
No. 19-cv-01171-LB, 2019 WL 3975137 (N.D. Cal. Aug. 22, 2019) .............................17

*Pearson v. Callahan*,
555 U.S. 223 (2009)....................................................................................................13

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986)..............................................................................................21, 22

*Perry-Roman v. AIG Retirement Servs.*,
No. CV 09-02287DOC(RNBx), 2009 WL 10676146 (C.D. Cal. June 11, 2009)............. 7

*Riese v. Cnty. of Del Norte*,
No. 12-cv-03723-WHO, 2013 WL 5568707 (N.D. Cal. Oct. 9, 2013) ...........................20

*Robertson v. Bruckert*,
568 F. Supp. 3d 1044 (N.D. Cal. 2021) ........................................................................22

*Roe v. City & County of S.F.*,
109 F.3d 578 (9th Cir. 1997).................................................................................22, 23

*Rusheen v. Cohen*,
37 Cal.4th 1048 (2006) ...............................................................................................25

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*,
44 F.4th 867 (9th Cir. 2022).........................................................................................13

*Saucier v. Katz*,
533 U.S. 194 (2001).....................................................................................................14

*Saved Magazine v. Spokane Police Dep't*,
19 F.4th 1193 (9th Cir. 2021)........................................................................................14

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529 (9th Cir. 1992)................................................................................18, 19

*Sheldon Appel Co. v. Albert & Oliker*,
47 Cal. 3d 863 (1989) ............................................................................................23, 24

*Simmons v. Arnett*,
47 F.4th 927 (9th Cir. 2022).........................................................................................14

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)...................................................................................5, 12

*Steshenko v. Gayrard*,
70 F. Supp. 3d 979 (N.D. Cal. 2014) .............................................................................19

*Sycamore Ridge Apartments, LLC v. Newman*,
157 Cal. App. 4th 1385 (2007)......................................................................................23

*Taylor v. Yee*,
  780 F.3d 928 (9th Cir. 2015) .......................................................................................... 4

*U.S. v. Camou*,
  773 F.3d 932 (9th Cir. 2014) ...................................................................................15, 16

*U.S. v. Garcia*,
  205 F.3d 1182 (9th Cir. 2000) .................................................................................15, 16

*Watison v. Carter*,
  668 F.3d 1108 (9th Cir. 2012) ........................................................................................10

*Weiner v. San Diego Cnty.*,
  210 F.3d 1025 (9th Cir. 2000) ........................................................................................20

*White v. Brinkman*,
  23 Cal. App. 2d 307 (1937) .....................................................................................23, 24

*Zheng Liu v. Terry*,
  No. 21-cv-01179-JSC, 2021 WL 2688846 (N.D. Cal. June 30, 2021) ...........................25

## STATUTES AND CODES

## California

## California Civil Code

§ 47 .....................................................................................................................................25
§ 52.1 ................................................................................................................................... 4
§ 335.1 .........................................................................................................................5, 6, 12
§ 473 .................................................................................................................................... 8

## California Government Code

§ 815 ............................................................................................................................24, 25

## California Penal Code

§ 148 .................................................................................................................................... 3
§ 166 ............................................................................................................................*passim*
§ 1001.95 ............................................................................................................................. 4

## California Superior Court Rules

Santa Clara County Superior Court General Court and
  Administration Rule 2B ...........................................................................................*passim*

Santa Clara County Superior Court General Court and
  Administration Rule 2C ...........................................................................................15, 16

1

**Federal**

2

United States Code

3

42 U.S.C. § 1983 ..........................................................................................*passim*
42 U.S.C. § 1985 ............................................................................. 4, 18, 19

4

5

Federal Rules of Civil Procedure

6

Rule 4 .............................................................................................................. 7
Rule 8 ...........................................................................................................1, 4
Rule 12 ............................................................................................ 1, 4, 7, 21
Rule 15 ...........................................................................................................7, 8, 9

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

When Plaintiff Susan Hazlett Bassi first filed this lawsuit in 2018, it was about a single event. Plaintiff alleged that County of Santa Clara ("County") deputies were liable for various Fourth Amendment violations, along with some derivative claims, based on a November 2017 incident at the Superior Court, during which Plaintiff used—and then refused to stop using—her cell phone camera in the courthouse, in clear violation of the Superior Court's well-established prohibition on recording in courthouse facilities.  When confronted, Plaintiff needlessly escalated the situation, prompting the forceful confiscation of her phone.  This lawsuit followed, but was thereafter stayed due to Plaintiff's parallel criminal prosecution for her conduct during the November 2017 incident.

Now the stay has been vacated and Plaintiff has filed a First Amended Complaint ("FAC"). She newly alleges a sprawling conspiracy involving the County, District Attorney Jeffrey F. Rosen, Deputy County Executive Kasey Halcón, and Sheriff's Deputies Bryan Oliveri and David Gomez (collectively, "County Defendants").[1]  But as explained below, the conspiratorial allegations and claims Plaintiff tries to shoehorn into the FAC are barred by a variety of legal doctrines, including absolute prosecutorial immunity, qualified immunity, and the statute of limitations.  Plaintiff's claims also do not satisfy the requirements of Federal Rules of Civil Procedure 8 and 12.

The Court should reject Plaintiff's baseless attempt to expand her lawsuit—which is already nearly five years old—into a cure-all for her grievances.  The County Defendants respectfully request that the Court grant their motion and dismiss the entirety of the FAC without leave to amend except for the Third, Ninth, and Tenth Causes of Action, which the County Defendants will address at summary judgment.

## II.      BACKGROUND

### A.      Factual Allegations

Plaintiff is a self-styled journalist and publisher.  Dkt. No. 77 (FAC) ¶ 32.  Her vendetta against DA Rosen appears to have begun in or around 2015, when she made a report to Rosen about

---

[1]  Plaintiff also names Nicole Ford, who she alleges was a commissioner on the County's Domestic Violence Council.  Ford is separately represented. *See* Dkt. No. 85.

1   alleged unspecified corruption by the Honorable James E. Towery, who presided over Plaintiff's

2   divorce proceedings.  *Id.* ¶¶ 33–36.  Plaintiff alleges that due to Rosen's purported ties with Judge

3   Towery—including the pair's alleged participation in a "secret, nonpublic group" called the Bench

4   Bar Media Police Committee ("BBMP")—Rosen "failed to pursue anyone involved in the corruption

5   that Plaintiff had reported."  *Id.* ¶ 40; *see also id.* ¶¶ 36–39.  As such, in November 2015, Plaintiff

6   published the first of many articles "about injustice and corruption occurring within the Santa Clara

7   County Court."  *Id.* ¶ 41.  That article was followed by many more.  *Id.* ¶¶ 42–47, 49–58, 62–65, 81–

8   82, 94, 100–01, 120, 122.  Plaintiff generally characterizes these articles as accusing Rosen of

9   malfeasance, misfeasance, corruption, or some combination of the three.  *See id.*

10       Plaintiff alleges that she raised similar concerns at various public County meetings, where

11   Rosen, Deputy County Executive Halcón, and/or Commissioner Ford were the targets of her ire.

12   She or others would voice comments critical of Santa Clara Superior Court's family division, *id.* ¶

13   61; the "lack of transparency" and "government accountability" in the Superior Court, *id.* ¶ 66;

14   Ford's service as a commissioner on a County board, *id.* ¶¶ 89, 93; and Halcón's work as then-

15   director of the Victim Services Unit within the District Attorney's Office (DAO), *id.* ¶ 103.  She

16   attended a County Board of Supervisors meeting in August 2018 during which she opined about

17   "corruption in our county" and Rosen's alleged complicity.  *Id.* ¶ 91.  At another meeting of the

18   County's Public Safety and Justice Committee in March 2019, Plaintiff accused Ford of "taking

19   bribes" and "failing to provide services to victims," and purports she concluded the meeting with the

20   statement, "Nicole Ford, you're next!"  *Id.* ¶ 96.

21       On July 3, 2019, Halcón and Ford petitioned the Superior Court for and received civil

22   harassment restraining orders against Plaintiff, which remain in effect.  *Id.* ¶¶ 105–10.

23       In addition to her many complaints about Rosen and others (which are summarized above

24   and addressed in greater detail in the argument below), Plaintiff's FAC documents her unwillingness

25   to comply with Santa Clara County Superior Court General Court and Administration Rule 2B

26   ("Rule 2B"), which prohibits the use of recording devices in any courthouse facility.  *See id.* ¶ 77.

27   For instance, on August 31, 2017, Plaintiff alleges she was arrested for "photograph[ing] her

28   colleague standing next to a United States flag in the hallway of the 8th floor of the Superior Court,"

1   though she alleges the arrest took place three months after she took the photo.  *Id.* ¶¶ 59, 80–81.

2   Then, on November 14, 2017, Plaintiff alleges she was at the Family Justice Center ("FJC") to take

3   photos of records "available via the public viewing terminals."  *Id.* ¶ 67.  Plaintiff alleges that

4   Deputy Oliveri, who "was watching Plaintiff on the courthouse's closed circuit video surveillance

5   system," dispatched three deputies to the records viewing room, who then "became violent" with

6   Scott Largent, another person taking photos of records in the room.  *Id.* ¶¶ 68–69.  Plaintiff

7   "instinctively used the video recording feature on her cellular phone to record the activities of the

8   deputies," prompting Deputy Gomez to ask Plaintiff to stop recording at least twice.  *Id.* ¶¶ 70–71.

9   Plaintiff does not allege she stopped recording, but instead alleges that Gomez "grabbed and crushed

10  Plaintiff's hand" and "confiscated Plaintiff's cellular phone."  *Id.* ¶ 72.  In the FAC, Plaintiff

11  selectively quotes dialogue between her and Gomez—from an unknown source—in which she

12  accuses him of an illegal search and seizure and claims Gomez broke her finger.  *See id.*

13       Plaintiff alleges that on November 17, 2017, she was charged with willfully violating a

14  lawful court order (*i.e.*, Rule 2B) under Cal. Pen. Code § 166(a)(4) for taking a photo in the

15  courthouse on August 31, 2017.  FAC ¶ 75.  In February 2018, Rosen filed additional charges under

16  Cal. Pen. Code § 166(a)(4) for the November 14, 2017 incident at the FJC, and added a charge for

17  willfully resisting or otherwise obstructing a peace officer in the discharge of his duty under Cal.

18  Pen. Code § 148(a)(1).  FAC ¶ 83.  Rosen later added additional charges under Cal. Pen. Code

19  § 166(a)(4) for subsequent violations by Plaintiff.  FAC ¶¶ 87, 111.  As part of her prosecution,

20  Plaintiff alleges Rosen caused several subpoenas to issue to Google, Inc., which ultimately resulted

21  in what Plaintiff describes as an improper document production by Google to the DAO in September

22  2020.  *Id.* ¶ 112–17.  On February 24, 2023, Plaintiff alleges without further detail that the claims

23  against her were dismissed without a conviction over the DAO's objection.  *See id.* ¶ 118–19, 121.

24  **B.   Procedural Posture**

25       On November 29, 2018, Plaintiff filed the initial complaint, which did not name Rosen or

26  Halcón and pertained solely to the November 2017 incident at the FJC.  Dkt. No. 1 ¶¶ 21–77.

27       In January 2019, the Court stayed this lawsuit pursuant to the parties' stipulation, based on

28  then-pending criminal charges against Plaintiff arising out of the November 2017 FJC incident.  Dkt.

No. 17 at 2 (vacating responsive pleading deadline).  The parties filed numerous status reports between 2019 and 2023, most of them stating that because the criminal case was still pending, this lawsuit should remain stayed.  *See* Dkt. Nos. 22, 31, 34, 38, 42, 50, 55, 59, 62.  Before the parties' November 4, 2022 status conference, Plaintiff's counsel informed the Court that Plaintiff intended to amend her initial complaint.  Dkt. No. 59 at 3.  At the November 4 conference, the Court gave Plaintiff leave to amend her complaint but kept the stay in place.  Dkt. No. 61 (minute order).  On April 19, 2023, Plaintiff's counsel reported that the criminal charges against Plaintiff were dismissed pursuant to Cal. Pen. Code § 1001.95 because she "successfully completed diversion."  Dkt. No. 68 at 2.  The stay was vacated that same day.  Dkt. No. 69 at 3.

The Court subsequently ordered Plaintiff to amend her complaint no later than August 7, 2023.  Dkt. No. 76 at 1.  On August 8, 2023, one day after the deadline, Plaintiff filed the FAC, which newly names Rosen and Halcón (and Ford) and in which she asserts 10 causes of action relating to a much broader set of allegations.  *See* Dkt. No. 77.  The FAC asserts (1) First Amendment retaliation pursuant to 42 U.S.C. § 1983; (2) illegal search and seizure under the Fourth Amendment pursuant to Section 1983; (3) excessive force under the Fourth Amendment pursuant to Section 1983; (4) malicious prosecution under the Fourth Amendment pursuant to Section 1983; (5) conspiracy to violate civil rights pursuant to 42 U.S.C. § 1985; (6) municipal liability pursuant to Section 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978); (7) malicious prosecution under California law; (8) abuse of process under California law; (9) battery under California law; and (10) violation of the Bane Act, Cal. Civ. Code § 52.1.

### III.    LEGAL STANDARD

A complaint that does not include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), is subject to dismissal under Rule 12(b)(6), which tests the legal sufficiency of the claims alleged in a complaint, *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).  The Court should grant a Rule 12(b)(6) motion either when a complaint fails to state a cognizable legal theory or when it fails to allege facts sufficient to support a cognizable legal theory. *Id.*  In evaluating the motion, the Court takes as true all the factual allegations in the complaint and construes them in the light most favorable to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th

1  Cir. 2001).  The Court need not, however, "accept as true allegations that are merely conclusory,

2  unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*,

3  266 F.3d 979, 988 (9th Cir. 2001).  The facts alleged in the complaint must state a plausible claim on

4  its face, meaning they must allow "the court to draw the reasonable inference that the defendant is

5  liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.*

6  *Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

7        A court "need not grant leave to amend" a claim deficient under Rule 8 where amendment

8  "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in

9  litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th

10 Cir. 2006).  Amendment is futile where "no amendment would allow the complaint to withstand

11 dismissal as a matter of law."  *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020).

12                    **IV.    ARGUMENT**

13 **A.    PLAINTIFF'S FIRST CAUSE OF ACTION FAILS.**

14        Plaintiff's First Cause of Action for First Amendment retaliation is rife with pleading

15 deficiencies.  Most critically, the First Cause of Action is time-barred as to Rosen and Halcón, who

16 are newly named in the FAC.  But even if that were not true, Plaintiff fails to state a plausible claim

17 for retaliation as to any of Rosen, Halcón, Oliveri, or Gomez.

18        **1.    The First Cause of Action is time-barred as to Rosen and Halcón.**

19        The FAC's First Cause of Action as to Rosen and Halcón pertains to conduct that took place

20 outside the limitations period and is therefore time-barred.

21              **a.    The applicable limitations period for Plaintiff's allegations against Rosen
                       and Halcón expired well before the FAC's filing.**

22

23        In Section 1983 actions, "courts apply the forum state's statute of limitations for personal

24 injury actions[.]"  *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017).  California's

25 statute of limitations for such actions is two years.  Cal. Civ. Proc. Code § 335.1.  "Although state

26 law determines the length of the limitations period, federal law determines when a civil rights claim

27 accrues."  *Morales v. City of L.A.*, 214 F.3d 1151, 1153–54 (9th Cir. 2000).  Under federal law, a

28 claim accrues "when the plaintiff knows or has reason to know of the" injury at issue.  *Id.* at 1154.

Even assuming *arguendo* that Plaintiff adequately alleges her First Cause of Action—and she does not, as explained in Section IV.A.2 below—Plaintiff's First Cause of Action against Rosen and Halcón is time-barred because it is based on conduct that took place more than two years ago. *See* Cal. Civ. Proc. Code, § 335.1. Her claim against Rosen is based on his purported "Retaliatory Investigation" of Plaintiff, none of which took place within the two-year limitations period, and all of which Plaintiff knew (or should have known) about at the time the alleged wrong occurred:

- Plaintiff's allegations about the Retaliatory Investigation are largely based on actions Rosen allegedly took to support Halcón and Ford's petitions for civil harassment restraining orders against Plaintiff—which they filed on July 3, 2019, ***more than four years before Plaintiff filed the FAC***, and which Plaintiff contends prevent her from doing her job as a journalist because they require her to stay away from the FJC and the County Government Center. *See* FAC ¶¶ 105–08, 110, 130.a–d, g.

- Plaintiff next asserts that Rosen directed Halcón and others to "refuse public services to Plaintiff" at the DAO's Victim Services Unit. *Id.* ¶ 130.e. Plaintiff alleges she was denied services in December 2018 and May 2019. *Id.* ¶ 95, 104. Both alleged denials—and Rosen's alleged directive, which presumably took place before the denials themselves—took place ***more than four years before Plaintiff filed the FAC***.

- Finally, Plaintiff asserts that Rosen directed the Chief Assistant District Attorney "to prevent Plaintiff from news gathering," *id.* ¶ 130.f, which presumably manifested in the Chief Assistant's March 14, 2019 statement to Plaintiff—***more than four years before the filing of the FAC***—that he could not speak with her for an "interview" due to her pending criminal charges. *Id.* ¶¶ 97–98.

Plaintiff's claim against Halcón is based on the same events: (1) Halcón's actions leading up to her filing of a petition for a civil restraining order against Plaintiff in July 2019, and (2) Halcón's alleged denial of services to Plaintiff at the Victim Services Unit in December 2018 and May 2019. *Id.* ¶¶ 95, 104–08, 110, 158. The claim against Halcón is thus untimely for the same reasons.

///

///

Defendants' Motion to Dismiss Plaintiff's FAC; MPA                                          18-CV-07239 SI

**b.**   **Plaintiff's untimely claims against Rosen and Halcón do not relate back to her initial complaint.**

An amendment to a pleading relates back to the date of the original pleading when "one of three factors are met." *Perry-Roman v. AIG Retirement Servs.*, No. CV 09-02287DOC(RNBx), 2009 WL 10676146, at *2 (C.D. Cal. June 11, 2009).  Those factors are set forth in Federal Rule of Civil Procedure 15(c)(1).  **First**, an amended pleading may relate back when "the law that provides the applicable statute of limitations allows relation back."  Fed. R. Civ. P. 15(c)(1)(A).  **Second**, an amended pleading relates back as to existing parties when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  **Finally**, "[w]here a plaintiff seeks to amend [her] complaint to add a new defendant, the plaintiff must satisfy Rule 15(c)(1)(C)."  *Nghiem v. Santa Clara Univ.*, No. 21-cv-06872-BLF, 2023 WL 3012494, at *4 (N.D. Cal. Mar. 20, 2023).  Under Rule 15(c)(1)(C), an amended pleading relates back if:

- The requirements of Rule 15(c)(1)(B) are satisfied; **and**

- The "party to be brought in by amendment"—within 90 days of service of the original complaint—"(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

Fed. R. Civ. P. 15(c)(1)(C) (citing Fed. R. Civ. P. 4(m)); *see also Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1202 (9th Cir. 2014) (notice requirements of Rule 15(c)(1)(C) are tied to original complaint); *Perry-Roman*, 2009 WL 10676146, at *2 (Rule 15(c)(1)(C)(i) and (ii) "require[] that the defendants knew or should have known that but for a mistake concerning the proper party's identity, they would have been named in the original complaint, and that the newly added defendants are not otherwise prejudiced in their defense").  In cases where, as here, "the limitations period derives from state law, Rule 15(c)(1) requires [courts] to consider both federal and state law and employ whichever affords the 'more permissive' relation back standard."  *Butler*, 766 F.3d at 1201.

///

1   The relation-back analysis thus begins with Rule 15(c)(1)(A), "which requires the Court to consider

2   state law." *Nghiem*, 2023 WL 3012494, at *3 (citing *Butler*, 766 F.3d at 1201).

3           (i)      **Plaintiff's new causes of action do not relate back under Rule
                     15(c)(1)(A).**
4

5           Plaintiff's untimely claims against Rosen and Halcón do not relate back to her original

6   complaint under California law, and thus fail to satisfy Rule 15(c)(1)(A).  Under California law,

7   amendment of pleadings is generally governed by Cal. Civ. Proc. Code § 473(a)(1), which "does not

8   contain any express provision for relation back of amendments."  *Butler*, 766 F.3d at 1201 (citing

9   *Bd. of Trs. of Leland Stanford Jr. Univ. v. Superior Court*, 149 Cal. App. 4th 1154, 1163 (2007)).

10  "Courts have held that [Section 473(a)(1)] does not authorize the addition of a party for the first time

11  whom the plaintiff failed to name in the first instance."  *Id.* (citing *Kerr-McGee Chem. Corp. v.*

12  *Superior Court*, 160 Cal. App. 3d 594, 598–99 (1984)); *see also Nghiem*, 2023 WL 3012494, at *3

13  (noting general rule that "an amended complaint that adds a new defendant does ***not*** relate back to

14  the date of filing the original complaint and the statute of limitations is applied as of the date the

15  amended complaint is filed, not the date the original complaint is filed") (citing *Hawkins v. Pac.*

16  *Coast Bldg. Prod., Inc.*, 124 Cal. App. 4th 1497, 1503 (2004)) (original emphasis).

17          Here, Plaintiff's time-barred claims are against Rosen and Halcón, who Plaintiff "failed to

18  name in the first instance."  *Butler*, 766 F.3d at 1201 (citing Cal. Civ. Proc. Code § 473(a)(1)).  The

19  claims therefore do not relate back under Rule 15(c)(1)(A).

20          (ii)     **Plaintiff's new causes of action do not relate back under Rule
                     15(c)(1)(C).**
21

22          Because Plaintiff's claims against Rosen and Halcón do not relate back under California law,

23  the analysis turns to whether the claims relate back under the federal relation-back standard set forth

24  in Rule 15(c)(1)(C).  They do not.

25          Rule 15(c)(1)(C) "was intended to protect a plaintiff who mistakenly names a party and then

26  discovers, after the relevant statute of limitations has run, the identity of the proper party"—not "a

27  plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party."  *G.F.*

28  *Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1503 (9th Cir. 1994) (citing *Kilkenny v. Arco*

8

*Marine Inc.*, 800 F.2d 853, 857–58 (9th Cir. 1986)) (cleaned up).  Here, that policy, coupled with the plain language of the rule, make clear that Plaintiff's allegations against Rosen and Halcón do not relate back to the original complaint:

     **First**, Rule 15(c)(1)(C) requires that Plaintiff's claims against Rosen and Halcón satisfy Rule 15(c)(1)(B)—*i.e.*, that they "[arise] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Even a cursory reading of Plaintiff's sprawling conspiratorial allegations confirms that her reasons for naming Rosen and Halcón in the First Cause of Action are wholly unrelated to the discrete incident described in the initial complaint—*i.e.*, the November 2017 incident at the FJC.  This fact is sufficient grounds for the Court to conclude that Plaintiff's claims against Rosen and Halcón do not relate back to the initial complaint.

     **Second**, Rule 15(c)(1)(C)(i) requires that Rosen and Halcón—within the 90-day period described in Rule 4(m)—"received such notice of the action that [they] will not be prejudiced in defending on the merits."  Plaintiff filed the initial complaint on November 29, 2018.  *See* Dkt. No. 1.  Under Rule 15(c)(1)(C)(i) and Rule 4(m), she was accordingly required to serve Rosen and Halcón 90 days thereafter.  *Perry-Roman*, 2009 WL 10676146, at *2; *Butler*, 766 F.3d at 1202. Plaintiff missed this requirement by just about four-and-a-half years.  *See* Dkt. Nos. 81, 82 (August 14, 2023 waivers of service for Rosen and Halcón).  Again, Plaintiff's failure to satisfy this prerequisite precludes any effort to rope Rosen or Halcón into this lawsuit.

     **Third**, Rule 15(c)(1)(C)(ii) requires that Rosen and Halcón—again, within 90 days of Plaintiff's filing of the ***initial*** complaint—"knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity."  But the FAC makes clear that Rosen and Halcón are not now being named—nearly five years after the filing of the initial Complaint—due to mistake.  Rather, Plaintiff believes Rosen and Halcón are players in a convoluted conspiracy and she wishes to belatedly add them to her existing lawsuit—in direct contravention of the purpose and policy of Rule 15.  *See G.F.*, 23 F.3d at 1503.

     The Court should not countenance Plaintiff's effort to relate her untimely First Cause of Action against Rosen and Halcón back to the initial complaint.  The claim is time-barred and the Court should dismiss the First Cause of Action as to them without leave to amend.

1
2

**2.      Plaintiff does not adequately allege her First Cause of Action against any County Defendant.**

3       Even if there were no timeliness issues with Plaintiff's First Cause of Action, it is still

4   inadequately pled as to Rosen, Halcón, Oliveri, and Gomez.  To state a viable First Amendment

5   retaliation claim, Plaintiff "must plead facts sufficient to support a plausible inference that [the

6   County Defendants] acted with retaliatory motive and that their actions had a chilling effect" on her

7   protected activity.  *Eberhard v. Cal. Highway Patrol*, 73 F. Supp. 3d 1122, 1126 (N.D. Cal. 2014).

8   As such, Plaintiff must "allege a causal connection between the adverse action and the protected

9   conduct."  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).  While it is sufficient to allege "a

10  chronology of events from which retaliation can be inferred," *id.*, there can be no causal connection

11  where the defendants "did not have knowledge about the [protected] speech in the first place," *Flynn*

12  *v. City of Santa Clara*, 388 F. Supp. 3d 1158, 1164–65 (N.D. Cal. 2019) (citing authorities).

13      Here, Plaintiff devotes dozens of paragraphs in the FAC to describing her purported

14  protected activity, which generally falls into two categories: Plaintiff's publication of articles about

15  perceived corruption in local government, and Plaintiff's voicing her opinion regarding alleged

16  corruption in the County in various public meetings.  *See* FAC ¶¶ 41–47, 49–58, 62–65, 81–82, 94,

17  100–01, 120, 122 (describing publications); *id.* ¶¶ 66, 90–91, 93, 96, 102–03 (describing meetings).

18  Those activities, however, do not give rise to a claim for First Amendment retaliation:

19      •      **Rosen:** Plaintiff makes no allegation that Rosen knew of any of the protected activity

20              she describes in the FAC.  Rosen's lack of knowledge precludes Plaintiff's claim

21              against him.  *See Flynn*, 388 F. Supp. 3d at 1164–65.

22      •      **Halcón:** The sole allegation in the FAC about Halcón's knowledge of Plaintiff's

23              protected activity is Plaintiff's assertion that Halcón was in the audience on March 7,

24              2019 when Plaintiff attended the County's "Public Safety and Justice Committee

25              meeting where public comments were taken regarding the" Domestic Violence

26              Council, and accused the DAO's Victim's Services Unit of "taking bribes and failing

27              to provide services to victims of crime."  FAC ¶ 96.  Plaintiff does not allege any

28  ///

1   plausible causal connection between this single event and any of Halcón's alleged

2   conduct (*e.g.*, seeking a civil harassment restraining order).

3   • **Oliveri:** Plaintiff makes no allegation that Oliveri knew about any of the protected

4   activity she describes in the FAC, thus precluding her claim against him. *Flynn*, 388

5   F. Supp. 3d at 1164–65.  Plaintiff alleges, in passing, that her attorney "submitted a

6   complaint" to the Sheriff's Office about Oliveri's "conduct," but fails to describe the

7   alleged conduct or what was in the complaint.  FAC ¶ 170.  Without those facts, it is

8   unclear whether Plaintiff's complaint constituted protected activity or if there is a

9   plausible causal connection with Oliveri's alleged retaliatory acts.

10  • **Gomez:** Plaintiff contends that her "lawful[] videorecording" of Gomez's "law

11  enforcement activities" motivated him to illegally search and seize her phone and use

12  excessive force on her.  *See* FAC ¶¶ 184–85.  But nothing in the FAC suggests that

13  Gomez's actions were motivated by retaliation.  To the contrary, the only reasonable

14  inference from Plaintiff's allegations is that Gomez was trying to enforce Rule 2B's

15  prohibition on the use of recording devices in the courthouse, which Plaintiff quotes

16  at length.  *See id.* ¶¶ 67–74 (describing Plaintiff's use of recording device in

17  courthouse and Gomez's response); *id.* ¶ 77 (citing Rule 2B, which prohibits

18  recording devices in courthouse).

19  Plaintiff also frequently fails to allege actual facts describing what, exactly, Rosen, Halcón,

20  Oliveri, and Gomez did to chill her speech.  Nothing in the FAC supports Plaintiff's contention that

21  Rosen directed anyone from the Victim Services Unit to refuse service to Plaintiff (FAC ¶ 130.e), or

22  directed his chief assistant to "prevent Plaintiff from newsgathering" (¶ 130.f), or prevented Plaintiff

23  from investigating the BBMP (¶130.g).  Nothing supports Plaintiff's contention that Halcón made

24  false reports about Plaintiff to the DAO or Sheriff's Office (¶158.c) or denied Plaintiff victim

25  services (¶ 158.f).  Nothing supports Plaintiff's contention that Oliveri made false reports about

26  Plaintiff (¶ 171.b–c) or caused Plaintiff's false arrest (¶ 171.d).  Nothing supports her contention that

27  Gomez arrested Plaintiff without probable cause or caused Plaintiff's false arrest (¶ 185.i–j).  The

28  foregoing attempts to plead conclusory assertions in lieu of factual allegations should be disregarded,

11

1  *see Sprewell*, 266 F.3d at 988, and the Court should dismiss the First Cause of Action against Rosen,

2  Halcón, Oliveri, and Gomez for failure to state a claim (to the extent it does not dismiss the claims

3  against Rosen and Halcón as time-barred).

4  **B.    PLAINTIFF'S SECOND CAUSE OF ACTION FAILS.**

5      Plaintiff's Second Cause of Action for illegal search and seizure under the Fourth

6  Amendment, brought against Rosen and Gomez, is incurably flawed in several respects.

7      **1.    Plaintiff's Second Cause of Action against Rosen is barred by prosecutorial
         immunity and the statute of limitations.**

8

9      Plaintiff's Second Cause of Action against Rosen runs headlong into absolute prosecutorial

10  immunity and the statute of limitations.

11      *First*, Rosen's alleged conduct falls within the ambit of prosecutorial immunity.  Prosecutors

12  acting in their official capacity are afforded absolute immunity for all actions "intimately associated

13  with the judicial phase of the criminal process[.]"  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976);

14  *see also Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) ("If the action was part of the judicial

15  process, the prosecutor is entitled to the protection of absolute immunity whether or not he or she

16  violated the civil plaintiff's constitutional rights.").  This absolute immunity "extends to the issuance

17  of a subpoena to gather evidence in preparation for a trial."  *Ezor v. Lacey*, No. 19-4020-JVS (AGR),

18  2021 WL 942747, at *2 (C.D. Cal. Mar. 12, 2021) (citing *Garmon v. Cnty. of L.A.*, 828 F.3d 837,

19  844 & n.5 (9th Cir. 2016)) (dismissing action without leave to amend based on prosecutorial

20  immunity).  In the Second Cause of Action, Plaintiff expressly seeks to hold Rosen liable for the

21  DAO's alleged issuance of subpoenas to Google, Inc. as part of its criminal prosecution of Plaintiff.

22  FAC ¶¶ 112–17, 197, 204.  Rosen is absolutely immune from any liability based on that conduct.

23      *Second*, even if Rosen did not have absolute immunity, the claim is time-barred.  Plaintiff's

24  allegations against Rosen are based on the DAO's issuance of three subpoenas, the latest of which

25  issued on December 23, 2019.  *See id.* ¶ 112–13, 115.  If Plaintiff wished to bring a Section 1983

26  claim based on that conduct, she had to do so by December 23, 2021 at the latest—*i.e.*, two years

27  after her purported cause of action accrued.  *See Klein*, 865 F.3d at 1278; Cal. Civ. Proc. Code §

28  335.1.  She missed this deadline by nearly two years when she filed the FAC on August 8, 2023.

1    Plaintiff's Second Cause of Action against Rosen should be dismissed without leave to amend.

2              **2.      Plaintiff's Second Cause of Action against Gomez is barred by qualified**
               **immunity.**
3

4            Plaintiff's claim against Gomez is barred by qualified immunity because his alleged

5    warrantless search of her phone, which forms the basis of Plaintiff's Second Cause of Action, did not

6    violate a clearly established right given the unique circumstances alleged by Plaintiff.

7              **a.      The issue of qualified immunity should be decided as early as possible.**

8            Qualified immunity "protects government officials from liability for civil damages insofar as

9    their conduct does not violate clearly established statutory or constitutional rights of which a

10   reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Plaintiffs

11   asserting Section 1983 claims against government officials thus overcome qualified immunity only

12   when they "demonstrate that (1) a federal right has been violated and (2) the right was clearly

13   established at the time of the violation." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592,

14   599 (9th Cir. 2019).  Courts may exercise their discretion "in deciding which of the two prongs of

15   the qualified immunity analysis should be addressed first." *Id.*  When "properly applied," qualified

16   immunity "protects all but the plainly incompetent or those who knowingly violate the law."

17   *Hernandez v. City of San José*, 897 F.3d 1125, 1132–33 (9th Cir. 2018) (cleaned up).  Put

18   differently, "qualified immunity gives government officials breathing room to make reasonable but

19   mistaken judgments." *Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021) (cleaned up).

20           As a threshold matter, the United States Supreme Court "repeatedly [has] stressed the

21   importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*,

22   555 U.S. at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).  Indeed, because

23   "qualified immunity is an immunity from suit, rather than a mere defense to liability," *id.* (quoting

24   *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (cleaned up), it "gives government officials a right,

25   not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as

26   discovery," *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 892 (9th Cir. 2022).  This

27   Court therefore can and should resolve the issue of qualified immunity on the pleadings. *See Saved*

28   *///*

1    *Magazine v. Spokane Police Dep't*, 19 F.4th 1193, 1198–1201 (9th Cir. 2021) (affirming district

2    court's dismissal with prejudice of First Amendment violations on qualified immunity grounds).

3        **b.    Plaintiff did not have a clearly established right to be free from a**
         **warrantless search during the November 2017 FJC incident.**

4

5        Assuming *arguendo* that Plaintiff adequately alleges that Gomez violated a constitutional

6    right by searching her phone during the November 2017 incident at the FJC, she cannot demonstrate

7    that "such right was clearly established at the time of the violation." *Horton*, 915 F.3d at 599.

8        The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a

9    high level of generality." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela*

10   *v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam)) (ellipses in original).  "The 'clearly

11   established' standard . . . requires that the legal principle clearly prohibit the officer's conduct in the

12   particular circumstances before him"—*i.e.*, that the "rule's contours . . . be so well defined that it is

13   'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Dist. of*

14   *Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

15   That is, "existing precedent must have placed beyond debate the unconstitutionality of the officials'

16   actions, ***as those actions unfolded in the specific context of the case at hand.***"  *Hamby v.*

17   *Hammond*, 821 F.3d 1085, 1091 & n.3 (9th Cir. 2016) (noting the Supreme Court has "repeatedly

18   stated that the 'clearly established' inquiry demands that courts train their attention on the particular

19   facts under review") (emphasis added).  It is the plaintiff's burden to identify that precedent,

20   *Simmons v. Arnett*, 47 F.4th 927, 934–35 (9th Cir. 2022), which in these circumstances, must come

21   from either the Supreme Court or the Ninth Circuit, *see Evans*, 997 F.3d at 1066–67.

22       To overcome qualified immunity, Plaintiff must identify binding federal precedent that

23   would have clearly prohibited Gomez's alleged warrantless search of Plaintiff's cell phone during

24   the November 2017 incident at the FJC, a courthouse facility subject to Rule 2B's mandate that

25   "[a]ny and all 'photographing' and/or 'recording' and/or 'broadcasting' . . . of people, things,

26   conversations, or proceedings is strictly prohibited. . . absent written order of the Supervising Judge

27   of the specific courthouse facility."  FAC ¶ 77 (quoting Rule 2B).  Rule 2B also provided that "[a]ny

28   device that appears capable of photographing, recording, or broadcasting is subject to confiscation."

1    *Id.* Another provision, Rule 2C, provided that violators could be cited for contempt of court.  *Id.*

2         Plaintiff cannot overcome Gomez's qualified immunity.  "[A] search of private property

3    without proper consent is unreasonable in all but 'certain carefully defined classes of cases' unless it

4    has been authorized by a valid search warrant." *Klarfield v. U.S.*, 944 F.2d 583, 586 (9th Cir. 1991).

5    Two exceptions to the general rule are relevant here.  The first is the "plain view" exception, which

6    "requires: (1) that the initial intrusion must be lawful; and (2) that the incriminatory nature of the

7    evidence must be immediately apparent to the officer." *U.S. v. Garcia*, 205 F.3d 1182, 1187 (9th

8    Cir. 2000).  "The rationale of the plain-view doctrine is that if contraband is left in open view and

9    observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate

10   expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment[.]" *Minn.*

11   *v. Dickerson*, 508 U.S. 366, 375 (1993).  The second relevant exception is the exigency exception,

12   which provides that "officers may make a warrantless search if: (1) they have probable cause to

13   believe that the item or place to be searched contains evidence of a crime, and (2) they are facing

14   exigent circumstances that require immediate police action." *U.S. v. Camou*, 773 F.3d 932, 940 (9th

15   Cir. 2014).  Exigent circumstances include those that would cause a reasonable person to believe that

16   the search "was necessary to prevent . . . the destruction of relevant evidence . . . or some other

17   consequence improperly frustrating legitimate law enforcement efforts." *Id.*

18        The case of *Hiramanek v. Clark* aptly applies the foregoing principles in this same context—

19   the Santa Clara County Superior Court.  No. 5:13-cv-00228-RMW, 2016 WL 4549153 (N.D. Cal.

20   Sept. 1, 2016).  In *Hiramanek*, the plaintiff sued a County Sheriff's deputy assigned to the family

21   courthouse under Section 1983 because the deputy had allegedly "illegally confiscated and searched

22   plaintiff's cell phone in [a] courtroom" after witnessing the plaintiff use it during court proceedings.

23   *Id.* at *2, 7.  The district court described the Superior Court's "prohibition on photography and

24   recording" as reflected in Rule 2B and Rule 2C, *id.* at *4, and noted that "a person guilty of

25   contempt of court may be guilty of a corresponding misdemeanor under California Penal Code

26   Section 166," *id.* at *7.  Because the plaintiff's cell phone "was the instrument of a crime and was in

27   plain view, the Fourth Amendment allowed [the deputy] to seize the device." *Id.*  Further, the court

28   found that had the deputy conducted a warrantless search of the phone, he would be entitled to

15

1    qualified immunity "because the unlawfulness of searching a cellphone that was the instrument of a

2    crime was not clearly established at the time of the alleged search in April 2012."  *Id.* at *8.

3         Gomez is entitled to qualified immunity because the unlawfulness of his conduct—as alleged

4    by Plaintiff—was not clearly established at the time of the incident.  Plaintiff admits that Rule 2B

5    and Rule 2C prohibited the use of recording devices in the FJC and provided for criminal penalties,

6    respectively.  *Id.* ¶ 77.  And she admits that she violated that rule at least twice—by using her phone

7    to "photograph the publicly available records" in the records viewing room, *id.* ¶ 68, and "record the

8    activities of the deputies," *id.* ¶ 70.  Given those allegations, Gomez's actions were reasonable under

9    the plain-view exception because (1) he was lawfully present in the FJC, and (2) the "incriminatory

10   nature of the evidence" on Plaintiff's phone would have been "immediately apparent" to him, given

11   the courthouse's prohibition on using recording devices and the fact that he witnessed her using it to

12   record.  *Garcia*, 205 F.3d at 1187.  Gomez's alleged actions were also reasonable under the exigency

13   exception.  He had probable cause to believe that Plaintiff's phone contained evidence of a crime

14   (*i.e.*, a misdemeanor pursuant to Cal. Pen. Code § 166) because he had witnessed it happen, and he

15   could have reasonably believed that he was "facing exigent circumstances that require[d] immediate

16   police action"—for example, to prevent Plaintiff from deleting the relevant photos evidencing her

17   misdemeanor.  *See Camou*, 773 F.3d at 940.

18        In view of these unique circumstances, Plaintiff's right to be free from a warrantless search

19   of her phone was not clearly established.  The Court should find that Plaintiff's Second Cause of

20   Action against Gomez is barred by qualified immunity, which is meant to give him "breathing room

21   to make reasonable but mistaken judgments."  *Evans*, 997 F.3d at 1067.  Accordingly, the Court

22   should dismiss Plaintiff's Second Cause of Action against Gomez without leave to amend.

23   **C.     PLAINTIFF'S FOURTH CAUSE OF ACTION FAILS.**

24        Plaintiff's Fourth Cause of Action against Oliveri and Gomez for malicious prosecution

25   under Section 1983 is inadequately pled.  "In order to prevail on a § 1983 claim of malicious

26   prosecution, a plaintiff 'must show that the defendants' prosecuted [her] with malice and without

27   probable cause, and that they did so for the purpose of denying [her] equal protection or another

28   specific constitutional right."  *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

1    Such claims "are not limited to suits against prosecutors but may be brought . . . against other

2    persons who have wrongfully caused the charges to be filed." *Id.*  Probable cause "is an absolute

3    defense to malicious prosecution," *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir.

4    2009), and "exists when there is a fair probability or substantial chance of criminal activity," *Lacey*

5    *v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012).  Whether a defendant's alleged actions were

6    supported by probable cause may be determined on the pleadings.  *See Pallas v. Accornero*, No. 19-

7    cv-01171-LB, 2019 WL 3975137, at *11 (N.D. Cal. Aug. 22, 2019) (dismissing malicious

8    prosecution claim based in part on lack of allegations relating to probable cause).

9           As an initial matter, Plaintiff's boilerplate allegations do not pass Rule 12(b)(6) muster.  The

10   alleged malicious prosecution at the center of her claims appears to be the "criminal proceedings"

11   instituted by the DAO.  FAC ¶¶ 243.  But the FAC is silent as to how Oliveri purportedly caused

12   those charges to be filed.  *See Awabdy*, 368 F.3d at 1066.  Indeed, the only allegations Plaintiff

13   makes about Oliveri's conduct in the ***entire*** FAC are that he (1) previously "interfered with

14   Plaintiff's divorce proceedings" in an unspecified manner, and (2) was "watching Plaintiff on the

15   courthouse's closed circuit video surveillance system" at the FJC on November 14, 2017 before he

16   "dispatched three deputies to the public records viewing room."  FAC ¶¶ 48, 68.  Plaintiff alleges

17   nothing that could conceivably be construed as a malicious prosecution by Oliveri, unless her theory

18   is that dispatching deputies to the records viewing room was tantamount to causing charges to be

19   filed against Plaintiff.  *Awabdy*, 368 F.3d at 1066.  As for Gomez, Plaintiff alleges only that on

20   November 14, 2017, he "caused to be initiated criminal proceedings against Plaintiff without

21   probable cause," presumably by way of his alleged confrontation with Plaintiff.  FAC ¶ 243.  But

22   this does not square with her allegations that her criminal charges pertained to incidents other than

23   and in addition to the November 2017 incident at the FJC.  *Id.* ¶¶ 75, 83, 87, 111.  Nor is there any

24   allegation by Plaintiff regarding how Gomez prompted any of those criminal charges—including

25   those related to the incident at the FJC in November 2017.  *See id.* ¶ 82 (alleging that ***Rosen*** filed

26   criminal charges against Plaintiff for her conduct in the November 2017 FJC incident).

27          Moreover, even if Plaintiff had adequately pled how, exactly, Gomez and Oliveri prosecuted

28   her, they would have the "absolute defense" of probable cause.  *Lassiter*, 556 F.3d at 1054–55.

1   Plaintiff alleges that she was using her cell phone in the record viewing room both to take photos of

2   records and, later, to record deputies' interaction with Scott Largent, all of which violated Rule 2B.

3   FAC ¶¶ 68–70, 77.  Plaintiff alleges that Oliveri saw her, via the closed-circuit surveillance system,

4   use her cell phone to take photos of records.  *Id.* ¶ 68.  She further alleges that Gomez saw her use

5   her phone to "record the activities of the deputies," which is what prompted him to ask Plaintiff to

6   "stop recording."  *Id.* ¶¶ 70–71.  In other words, based on Plaintiff's allegations, not only was there

7   "a fair probability or substantial chance of criminal activity," *Lacey*, 693 F.3d at 918—Oliveri and

8   Gomez were *eyewitnesses* to Plaintiff's violations of Rule 2B, and thus Cal. Pen. Code § 166(a)(4).

9          Given Plaintiff's failure to plausibly allege a malicious prosecution by Oliveri or Gomez—

10  and the existence of probable cause—Plaintiff's Fourth Cause of Action should be dismissed without

11  leave to amend.

12  **D.   PLAINTIFF'S FIFTH CAUSE OF ACTION FAILS.**

13         Plaintiff's Fifth Cause of Action for conspiracy to violate civil rights under 42 U.S.C.

14  § 1985—brought against Rosen, Halcón, Oliveri, and Gomez—is inadequately pled.

15         Section 1985 identifies three types of actionable conspiracies to interfere with civil rights: (1)

16  conspiracies to prevent an officer from performing her duties; (2) conspiracies to obstruct justice or

17  intimidate a party, witness, or juror; and (3) conspiracies to deprive persons of rights or privileges.

18  42 U.S.C. § 1985(1)–(3).  To plead a cause of action under Section 1985(3)[2] for conspiracy to

19  deprive a person of their rights, a plaintiff must plead that there was

20         (1) a conspiracy; (2) for the purpose of depriving, either directly or
    indirectly, any person or class of persons of the equal protection of the

21         laws, or of equal privileges and immunities under the laws; and (3) an
    act in furtherance of this conspiracy; (4) whereby a person is either

22         injured in his person or property or deprived of any right or privilege

23         of a citizen of the United States.

24  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).  As to the first element, "[a] mere

25  allegation of conspiracy without factual specificity is insufficient."  *Karim-Panahi v. L.A. Police*

26

27  ─────────────────────
    [2]  Plaintiff does not specify which prong of section 1985 gives rise to her purported claim.  This
    analysis is accordingly limited to prong (3), as Plaintiff states no facts that would remotely implicate

28  prongs (1) or (2).

1    *Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).  Courts have found allegations "that identify the period of

2    the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators

3    taken to achieve that purpose," as well as "which defendants conspired, how they conspired and how

4    the conspiracy led to a deprivation of . . . constitutional rights" satisfy the pleading requirements for

5    Section 1985(3).  *Steshenko v. Gayrard*, 70 F. Supp. 3d 979, 998–99 (N.D. Cal. 2014) (dismissing

6    Section 1985(3) claims with prejudice) (original ellipses) (cleaned up).  "As to the second element, a

7    plaintiff must not only identify a legally protected right, but also demonstrate a deprivation of that

8    right motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus

9    behind the conspirators' action." *Id.* at 998–1000 (citing *Sever*, 978 F.2d at 1536) (dismissing

10   Section 1985(3) claims in part because "individuals who petition the courts" did not constitute a

11   "judicially recognized suspect or quasi-suspect group") (cleaned up).

12       Plaintiff's allegations in support of her claim under Section 1985(3) are boilerplate.  Rather

13   than describe the purported conspiracy with any factual specificity, Plaintiff attempts to incorporate

14   the entirety of the convoluted FAC by alleging that her rights "were violated" by Rosen, Halcón,

15   Oliveri, and Gomez "by their wrongful conduct as alleged above." FAC ¶ 251.  Of course, none of

16   the FAC's allegations lend plausibility to Plaintiff's bare assertion, "[o]n information and belief,"

17   that Rosen, Halcón, Oliveri, Gomez, and others "agreed and conspired, and shared the same

18   conspiratorial objective with each other to violate the . . . constitutional rights of Plaintiff." *Id.* ¶

19   253.  And even if Plaintiff could describe the conspiracy with the requisite particularity, she could

20   not allege that the object of that conspiracy was a deprivation of her rights "motivated by some

21   racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Steshenko*, 70 F. Supp.

22   3d at 998.  The Court should dismiss the Fifth Cause of Action without leave to amend.

23   **E.     PLAINTIFF'S SIXTH CAUSE OF ACTION FAILS.**

24       Plaintiff's Sixth Cause of Action against the County for municipal liability is based on what

25   she dubs Rosen's "Retaliatory Prosecution."  The claim is barred as matter of law because Rosen

26   acts as a ***state*** official when acting in his role as a prosecutor, precluding liability from flowing up to

27   the ***County*** under *Monell*.  The *Monell* claim is also inadequately pled.

28   ///

1    "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy,

2    practice, or custom of the entity can be shown to be a moving force behind a violation of

3    constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing

4    *Monell*, 436 U.S. at 694).  A plaintiff cannot establish municipal Section 1983 liability "solely

5    because [a municipality] employs a tortfeasor." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134,

6    1153 (9th Cir. 2021).  "[I]n other words, a municipality cannot be held liable under § 1983 on a

7    *respondeat superior* theory." *Id.*

8          As an initial and dispositive matter, California law provides that a county prosecutor "acts as

9    a state official when deciding whether to prosecute an individual." *Weiner v. San Diego Cnty.*, 210

10   F.3d 1025, 1030 (9th Cir. 2000).  Thus, courts have rejected attempts to impose liability on **counties**

11   for decisions by prosecutors about whether to prosecute, who are **state** actors for those purposes.

12   *See, e.g.*, *Riese v. Cnty. of Del Norte*, No. 12-cv-03723-WHO, 2013 WL 5568707, at *3 (N.D. Cal.

13   Oct. 9, 2013) (proposed municipal liability claims against County of Del Norte based on official's

14   "execution of his prosecutorial duties" were futile "because District Attorneys act as state officers,

15   and not county officers, in their investigation and prosecution of criminal cases"); *Cotton v. Cnty. of*

16   *San Bernardino*, No. EDCV 15-2314-VAP (AGR), 2016 WL 7187442, at *12 (C.D. Cal. Nov. 9,

17   2016) (recommending that *Monell* claims against County of San Bernadino based on "acts and

18   omissions by prosecutors prosecuting criminal cases" be dismissed without leave to amend "because

19   district attorneys act as state officials, not as County officials, in prosecuting cases") (citing *Weiner*,

20   210 F.3d at 1031), *report & recommendation adopted in relevant part*, 2016 WL 7176575 (C.D. Cal.

21   Dec. 8, 2016); *Harvey v. City of Fresno*, No. 1:08-CV-01399-OWW-DLB, 2009 WL 3157524, at

22   *12 (E.D. Cal. Sept. 28, 2009) (dismissing *Monell* claims based on prosecutors' decisions with

23   prejudice).  Here, Plaintiff's municipal liability claims against the County are wholly predicated on

24   Rosen's criminal prosecution of Plaintiff.  FAC ¶¶ 258 (Rosen "acted under color of the law and as

25   the final decision and policymaker with respect to his office's prosecution in *People v. Susan Bassi*,

26   C1777801"), 263 (describing basis for *Monell* claim as Rosen's "Retaliatory Prosecution").  In other

27   words, Plaintiff seeks to hold the County liable for acts carried out by Rosen in his capacity as a state

28   official.  The *Monell* claim is fatally deficient for that reason alone.

Moreover, even if the County could be held liable for actions carried out by Rosen in his capacity as the District Attorney (and it cannot), Plaintiff's allegations are deficient under Rule 12(b)(6).  She appears to assert one of two theories of municipal liability: either that Rosen's decision to prosecute Plaintiff constituted an unconstitutional County policy, or that Rosen ratified a decision to prosecute Plaintiff that deprived her of her rights.  FAC ¶ 260.  Both theories fail.  As to the first, it is true that a plaintiff may state a *Monell* claim by showing "that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy."  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)).  But the United States Supreme Court long ago cautioned against casting every decision by a policymaker as "an act of official governmental policy":

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  ***The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.***  . . . To hold a municipality liable for actions ordered by such officers exercising their policymaking authority is no more an application of the theory of *respondeat superior* than was holding the municipalities liable for the decisions of the City Councils in *Owen* and *Newport*.  In each case municipal liability attached to a single decision to take unlawful action made by municipal policymakers.  ***We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.***

*Pembaur*, 475 U.S. at 481–84 (emphasis added) (cleaned up).

Plaintiff does not attack a policy established by Rosen.  Instead—quite transparently—she attempts to couch Rosen's "Retaliatory Prosecution" of Plaintiff as a County policy so she can challenge what would otherwise be protected by absolute prosecutorial immunity.  *See Imbler*, 424 U.S. at 430; *Hartman v. Moore*, 547 U.S. 250, 261–62 (2006) (prosecutors are "absolutely immune from liability for the decision to prosecute"); *Roe v. City & County of S.F.*, 109 F.3d 578, 583 (9th

1   Cir. 1997) (stating that "it is well established that a prosecutor has absolute immunity for the

2   decision to prosecute").  More importantly, Plaintiff contravenes *Pembaur* in seeking to hold Rosen

3   liable for a "single decision" he made to prosecute her, rather than for "establishing final government

4   policy respecting" criminal prosecutions more generally.  475 U.S. at 481–84.  The Court should

5   reject Plaintiff's bare assertions that Rosen's "acts and decisions were a conscious and deliberate

6   choice to follow a course of action from among various alternatives," *id.* ¶ 261, as she alleges

7   nothing to support that conclusory contention.  The Court should instead view the Sixth Cause of

8   Action for what it is: a failed effort to sue Rosen, under the guise of a *Monell* claim, for conduct

9   from which he is absolutely immune.

10          Plaintiff's *Monell* claim also fails to the extent it is based on a ratification theory.  A plaintiff

11  seeking to hold a municipality liable under Section 1983 may do so by proving "that an official with

12  final policy-making authority ratified a subordinate's unconstitutional decision or action and the

13  basis for it."  *Gillette*, 979 F.3d at 1346–47.  But this theory is at odds with Plaintiff's allegations,

14  which mention no subordinate, and instead consistently and conspiratorially paint Rosen as the

15  moving force behind Plaintiff's criminal prosecution.  FAC ¶ 263 ("Defendant ROSEN retaliated

16  against Plaintiff by causing, directing, managing, overseeing, and instructing deputy district

17  attorneys and other officials from his office and the Defendant COUNTY to ***assist him*** in

18  prosecuting Plaintiff.") (emphasis added).  Moreover, Plaintiff also fails to "allege[] the specific

19  pathway through which ratification occurred," as is required to plead such a *Monell* theory.

20  *Robertson v. Bruckert*, 568 F. Supp. 3d 1044, 1049 (N.D. Cal. 2021) (dismissing *Monell* ratification

21  claim for failure to state a claim).

22          The Sixth Cause of Action should accordingly be dismissed without leave to amend.

23  **F.      PLAINTIFF'S SEVENTH CAUSE OF ACTION FAILS.**

24          Plaintiff's Seventh Cause of Action for malicious prosecution under California law is beset

25  by different deficiencies depending on her target.[3]  Under California law, "[t]here are four essential

26  ─────────────────────────
27  [3]  Plaintiff is unclear as to which defendants are named in her Seventh Cause of action for malicious
     prosecution under California law.  For the sake of completeness, the County Defendants will assume
     that Plaintiff intended to include Rosen, Halcón, Oliveri, and Gomez, *see* FAC ¶ 272, and not just
28  Rosen and Halcón, as suggested by page 53, line 9 of the FAC.

1  elements to a malicious prosecution claim":

> First, there had to have been a prior action "commenced by or at the direction of the [malicious prosecution] defendant that was pursued to a legal termination in . . . the [malicious prosecution] plaintiff's favor." (We will refer to this as the favorable termination element.)  Second, the defendant must have brought the prior action without probable cause.  Third, the defendant must have initiated the prior action with malice.  Fourth, the plaintiff must show resulting damage, which may include out-of-pocket losses of attorney fees and costs, as well as emotional distress and injury to reputation.

*Maleti v. Wickers*, 82 Cal. App. 5th 181, 202 (2022) (cleaned up).  "It is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which [she] complains terminated in [her] favor." *Sycamore Ridge Apartments, LLC v. Newman*, 157 Cal. App. 4th 1385, 1399 (2007) (quoting *Babb v. Superior Court*, 3 Cal. 3d 841, 845 (1971)).  As with malicious prosecution actions under Section 1983, "[i]f the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 875 (1989); *see also White v. Brinkman*, 23 Cal. App. 2d 307, 312–13 (1937) ("If probable cause exists, it is an absolute protection against an action for malicious prosecution, even when express malice is proved.").

Plaintiff fails to state a malicious prosecution claim under California law as to any County Defendant.  Her claim against Rosen, presumably based on his "Retaliatory Prosecution," FAC ¶ 263, is plainly barred by the doctrine of prosecutorial immunity because it is predicated on Rosen's decision to prosecute.  *See Dei Gratia v. Stafford*, No. 14-cv-04019-LHK, 2015 WL 332633, at *7 (N.D. Cal. Jan. 23, 2015) (confirming prosecutorial immunity bars malicious prosecution claims) (citing *Milstein v. Cooley*, 257 F.3d 1004, 1008–09 (9th Cir. 2001)); *Imbler*, 424 U.S. at 430; *Hartman*, 547 U.S. at 261–62; *Roe*, 109 F.3d at 583.  And although Plaintiff does not specify the conduct that prompted her to name Halcón as a defendant in the Seventh Cause of Action, the basis for the claim appears to be Halcón's efforts to get a restraining order against Plaintiff.  FAC ¶¶ 105– 10.  As Plaintiff admits, Halcón was successful in her request for a civil harassment restraining order against Plaintiff—which remains active to date—thus precluding Plaintiff from satisfying the

1  "favorable termination" element.  *Id.* ¶¶ 108–09.  Finally, Plaintiff's malicious prosecution claims

2  against Oliveri and Gomez are barred for the same reason as her Section 1983 claims: based on

3  Plaintiff's allegations, there was probable cause for Oliveri and Gomez's alleged actions (to the

4  extent there are any allegations regarding their conduct), given that they were ***eyewitnesses*** to

5  Plaintiff's violation of Rule 2B, and thus Cal. Pen. Code § 166(a)(4).  *See* Section VI.C; *Sheldon*

6  *Appel*, 47 Cal. 3d at 875; *White*, 23 Cal. App. 2d at 312–13.

7       Plaintiff's state-law malicious prosecution claim against Rosen, Halcón, Oliveri, and Gomez

8  should be dismissed without leave to amend.

9  **G.    PLAINTIFF'S EIGHTH CAUSE OF ACTION FAILS.**

10      Plaintiff's Eighth Cause of Action for abuse of process—brought under California law

11 against Rosen and the County—is barred by the doctrine of prosecutorial immunity, the statute of

12 limitations, the litigation privilege, and Cal. Gov't Code § 815.  A plaintiff alleging abuse of process

13 "must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the

14 process and (2) committed a [willful] act in a wrongful manner."  *Coleman v. Gulf Ins. Grp.*, 41 Cal.

15 3d 782, 792 (1986).  Here, Plaintiff's claim is plainly barred by various doctrines.

16      ***First***, Plaintiff's Eighth Cause of Action against Rosen is based on her allegation that he

17 "wrongfully directed, instructed, and caused to be issued subpoenas duces tecum to Google, Inc."

18 FAC ¶ 280.  As explained in Section VI.B.1, a prosecutor's immunity "extends to the issuance of a

19 subpoena to gather evidence in preparation for a trial."  *Ezor*, 2021 WL 942747, at *2; *see also*

20 *Imbler*, 424 U.S. at 430.  Plaintiff's abuse-of-process claims falls squarely within the scope of

21 Rosen's prosecutorial immunity.

22      ***Second***, the claim against Rosen is untimely.  The statute of limitations for an abuse of

23 process under California law is one year.  *Bidari v. Kelk*, 90 Cal. App. 5th 1152, 1172 (2023).

24 Plaintiff's claim against Rosen is based on the DAO's issuance of three subpoenas, the latest of

25 which issued on December 23, 2019.  FAC ¶¶ 115, 280.  Plaintiff's Eighth Cause of Action against

26 Rosen is thus nearly three years too late.

27      ***Third***, California's litigation privilege poses another obstacle to Plaintiff's claim against

28 Rosen.  The litigation privilege "bars tort liability" based any communication or publication "made

1   in any judicial proceeding." *Pagtakhan v. Doe*, No. C 08-2188 SI (pr), 2013 WL 12440998, at *5

2   (N.D. Cal. Nov. 21, 2013) (noting that litigation privilege bars all torts except malicious prosecution)

3   (citing Cal. Civ. Code § 47(b)).  In other words, "[c]ommunications with some relation to judicial

4   proceedings are absolutely immune from liability under the litigation privilege." *Id.* (quoting

5   *Rusheen v. Cohen*, 37 Cal.4th 1048, 1058 (2006)) (cleaned up); *Mallard v. Progressive Choice Ins.*

6   *Co.*, 188 Cal. App. 4th 531, 543–44 (2010) (use of subpoenas fell within the litigation privilege).

7   "Any doubt as to whether the privilege applies is resolved in favor of applying it." *Adams v.*

8   *Superior Court*, 2 Cal. App. 4th 521, 529 (1992).  Rosen's use of subpoenas in connection with his

9   criminal prosecution of Plaintiff is absolutely immune from liability under the litigation privilege.

10      ***Finally***, Plaintiff's abuse-of-process claim against the County fails as a matter of law.

11  "Except as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such

12  injury arises out of an act or omission of the public entity or a public employee or any other person."

13  Cal. Gov't Code § 815(a).  In other words, in California, "public entity tort liability is exclusively

14  statutory." *Alapati v. City & Cnty. of S.F.*, No. 21-cv-04144-SI, 2022 WL 991724, at *9 (N.D. Cal.

15  Apr. 1, 2022) (quoting *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 868 (2012)).

16  Plaintiffs "must plead the statutory basis for liability" against a public entity. *Zheng Liu v. Terry*,

17  No. 21-cv-01179-JSC, 2021 WL 2688846, at *5 (N.D. Cal. June 30, 2021).  Here, Plaintiff cannot

18  do so because abuse of process is a common-law claim.

19      The Eighth Cause of Action should be dismissed without leave to amend.

20                          **V.    CONCLUSION**

21      For the reasons above, the County Defendants respectfully request that the Court grant their

22  motion without leave to amend.

23                                  Respectfully submitted,

24  Dated:  September 6, 2023              TONY LOPRESTI
                                          COUNTY COUNSEL
25
                                    By:  */s/ José L. Martinez*
26                                        JOSÉ L. MARTINEZ
                                          Deputy County Counsel
27                                        Attorneys for Defendants
                                          COUNTY OF SANTA CLARA, JEFFREY F.
28  2890349                                ROSEN, KASEY HALCÓN, DAVID GOMEZ,
                                          and BRYAN OLIVERI
                                            25